1817.

The overseers of the poor of the township of NORTH *Philadelphia.* WHITEHALL *against* The overseers of the poor of the township of SOUTH WHITEHALL. —

IN ERROR.

*Saturday,* April 5.

ERROR to the Common Pleas of *Lehigh* county, in an action of *assumpsit,* brought by the overseers of the poor of the township of *South Whitehall* against the overseers of the poor of the township of *North Whitehall,* for money paid by the former to the use of the latter. These two townships formerly constituted one township called *Whitehall,* which was divided on the 22d *November,* 1810, into *North White-hall* and *South Whitehall* townships. Before this period, the township of *Whitehall* was chargeable with the maintenance of a pauper, who was born in that part of the township which was now *South Whitehall.* It was contended on the part of the defendants in error, the plaintiffs below, that an order of two justices had been made for the maintenance of the pauper, and had been acted under, while the townships were united, and parol evidence was given of that fact, but the order itself was not produced. After the division, the overseers of the township of *South Whitehall* continued to maintain the pauper, and brought this suit to compel the overseers of the township of *North Whitehall* to pay their proportion of the expense of maintenance. The facts appeared upon a bill of exceptions returned with the record.

*Assumpsit* lies against a corporation on an implied contract. Where a pauper was chargeable to a township which was divided, it was held, that the overseers of the poor of one of the townships which maintained him after the division, might sustain *assumpsit* against the overseers of the poor of the other township, for a rateable proportion of the expense of maintenance.

3 SR 117
e 29 SC 183

*Rawle,* for the plaintiffs in error, contended,

1. That a corporation is not liable on an implied promise, but all their contracts must be under their corporate seal. Overseers of the poor are made a corporation, by the act of 9th *March,* 1771. 1 *Smith's Laws,* 338.

2. A township can be made chargeable only in the mode pointed out by act of assembly. Their liability arises altogether from the acts of assembly; and must be enforced according to the method there pointed out. No such thing as a suit for contribution is known to those acts.

3. The principal question is, whether *North Whitehall* re-

The overseers
of the poor of
the township
of NORTH
WHITEHALL
v.
The overseers
of the poor of
the township
of SOUTH
WHITEHALL.

mains liable after division.  This could not be the case, because by the division the township of *Whitehall* was extinguished, and all its liabilities and charges terminated.  The case is within the equity of the 2d section of the act of 24th *March*, 1803, which provides, that " if the last legal place of " settlement of any person under the poor laws of this " Commonwealth, now is, or hereafter shall be, in any town- " ship divided, by virtue of this act, and such person shall " become chargeable after the division thereof, he shall be " supported by that township within the territory of which " he resided at the time of gaining the settlement."  The words, " becoming chargeable," in this section, means *being chargeable*.

*Scott* and *Binney*, contra:

1. The principle that *assumpsit* lies against a corporation on an implied contract, is now well settled.  *Bank of Columbia* v. *Patterson.*(a)  *Danforth* v. *Scoharie Turnpike.*(b)  *Hayden* v. *Middlesex Turnpike.*(c)

2. The act of 24th *March*, 1803, comprehends only the cases of persons becoming chargeable after the division of the township, and does not embrace a case like the present, where the charge existed previously.  It leaves ground for an implication that such persons remain a charge on the whole after a division.  The pauper here was chargeable on the whole township of *Whitehall*.  It is the same as if the whole township had been liable to any other debt.  Suppose a county is indebted for the building of a bridge, would a division of the county annihilate the debt?  Upon every principle of equity and justice, those who constituted the whole township before a division, must, after it takes place, be liable, proportionably, for all the charges and burdens to which they were previously subjected.

TILGHMAN C. J.  This is an action on this case brought by the overseers of the poor of the township of *South Whitehall*, against the overseers of the poor of the township of *North Whitehall*, in the county of *Lehigh*.  The declaration is, for money paid by the plaintiffs for the use of the defendants ;

(a) 7 *Cranch*, 299.                              (c) 10 *Mass. Rep.* 397.
(b) 12 *Johns.* 227.

and the claim of the plaintiffs is founded on the following
facts. The two townships of *North* and *South Whitehall*
were originally parts of and constituted one township, called
*Whitehall,* which was divided into two, on the 22d *November,*
1810. Previous to the division, the township of *Whitehall*
became chargeable, and was charged, with the maintenance
of a pauper, by an order of two justices of the peace. I
state this to be a fact, because, from a view of the record,
including the evidence, and the charge of the Court, it is to
be presumed that the jury were satisfied, that an order of two
justices was made. After the division, the township of *South*
*Whitehall* continued to maintain the pauper, and this action
is brought to recover from *North Whitehall* its proportion of
the expenses. It was mentioned, but not much urged, by the
counsel for the defendants, that a corporation is not liable to an
action, unless bound by a contract under its *corporate seal.*
This point has been so much discussed, and so well settled
in other Courts, that I shall not go over the ground
again, but content myself with expressing my opinion, that
the action may be supported on an implied contract, and
with referring to the cases of the *Bank of Columbia* v. *Pat-*
*terson,* 7 *Cranch,* 299. *Danforth* v. *The Scoharie Turnpike*
*Company,* 12 *Johns.* 227, and *Hayden* v. *The Middlesex*
*Turnpike Company,* 10 *Mass. Rep.* 397. The case then will
turn upon the main question, whether a *new township,* created
by the division of an *old one,* is liable to a proportion of the
expenses of a pauper, who was a charge upon the *whole town-*
*ship,* before the division. It is a case, not provided for ex-
pressly, by the act authorising the Courts of Quarter Ses-
sions, to divide townships, passed 24th *March,* 1803. By
the 2d section of that act, " if the last legal place of set-
" tlement of any person, under the poor laws of this Com-
" monwealth, now is, or hereafter shall be, in any township
" divided by virtue of this act, and such person *shall become*
" *chargeable after the division thereof,* he shall be supported
" by that township, within the territory of which he resided,
" at the time of gaining the settlement." The expressions,
*becoming chargeable after the division, &c.* are not applica-
ble to the case of a person who *had become chargeable before*
*the division.* Had that been the intent of the legislature,
they would surely have expressed it. And by their silence
on that point, I presume it was the intent, that persons be-

1817.

The overseers of the poor of the township of North Whitehall
*v.*
The overseers of the poor of the township of South Whitehall.

coming chargeable *before* and *after* the division, should be on a different footing. Considering the charge of the pauper, as a burden upon the whole, before division, equity would require, that after division, the burden should be borne by those parts which constituted the whole. These overseers of the poor, are a body corporate, and capable of taking goods and real estate, to the value of 500*l.* a year, for the use of the poor; so that they are not only subject to the burden of the poor, but capable of enjoying valuable rights for their support. Supposing then, the overseers of a township to be possessed of property, and afterwards the township to be divided, what is to become of the property? It has been argued by the defendant, that the corporation of *Whitehall* was *annihilated* by the division, and therefore the new townships were free from the maintenance of all paupers charged upon the old township, until a new order was made by two justices. If so, they could have no right to any part of the property. But this, if there were property, is a proposition, to which they would not so readily assent. The truth, however, seems to be, that the charge of paupers before division, was upon the whole township; from which, neither of the new townships, springing out of the division, was exonerated. Each remains liable, in proportion to its rates and levies; and in the same proportion, each is entitled to the property which formerly belonged to the whole. The overseers are a body politic, created for the convenience of the township. They may hold property to a certain amount. They may sue and be sued. They are the organs, by which money is received and paid, and the township acts. But the charge of a pauper, properly speaking, is upon the *township*, and not upon the *overseers;* and the means of supporting him, are found by the *inhabitants of the township;* the tax is laid upon them. Upon the whole, the place in which this pauper had a settlement, being in *South Whitehall*, it was proper, that the overseers of that township should, in the first instance, provide for his maintenance, and then, call on the overseers of *North Whitehall*, for contribution. This was the opinion of the Judge before whom the cause was tried, and, therefore, I am of opinion, that there is no error.

GIBSON J. Whatever may be the duty of individuals, from religious or charitable considerations, it is certain, the

public is bound by no moral obligation to support the poor of the community. That duty, being *legal* and of positive institution, is to be carried no farther. than the express provisions of the poor laws. It binds not the inhabitants of a township either aggregately or separately, but the overseers of the poor, and these only in their corporate capacity. An order of maintenance is not directed to the inhabitants, but the overseers, who are constituted an artificial person, for purposes of administering relief. The inhabitants, it is true, contribute the means; but only through a particular channel, and as they can do so through no other, when the channel is destroyed they are necessarily discharged. Should the duty be held personally binding, it would be of indefinite continuance, even as to those inhabitants who removed from the township; and new-comers ought, on the same principle, to be rateable for the support only of such paupers as should become chargeable after such persons came to inhabit within the limits of the township, which, if it were practicable, would be inconvenient. Hence the necessity of corporate powers. The township, however, is not the corporation, nor even a constituent part of it, but the overseers of the poor, and on them the duty of administering relief rests. But on the breaking up of a township by forming it into new ones, there is an end of its overseers, and, consequently, of all corporate powers. It cannot be pretended where a new township is not cut off from an old one, (which is one mode of division authorised by the act of assembly,) but two new ones, each equally remote from the parent stock, are erected out of the old one, (which is another mode,) that the old township continues to exist: here the suit is not between a fragment and the original mass, but between two fragments, each of which has an equal right to be considered the original mass. On the dissolution then of a corporation of this sort, by forming the territory subjected to its controul into new townships in its stead, to what do the overseers of the latter succeed? Neither to its duties nor corporate abilities: not to its duties, for they obtain only its territory and inhabitants, on whom, as such, there never rested any duty: not to its corporate abilities, for there is no transfer of the old corporate powers, but a creation of new, deriving their existence incidentally from that of the townships erected. Now, it is under a notion

1817.

The overseers of the poor of the township of NORTH WHITEHALL v.

The overseers of the poor of the township of SOUTH WHITEHALL.

1817.

The overseers
of the poor of
the township
of NORTH
WHITEHALL
v.
The overseers
of the poor of
the township
of SOUTH
WHITEHALL.

that the old corporation and the new ones stand in a relation somewhat like that of ancestor and heir, and that the obligations of the former, together with its territory and inhabitants, as assets, descend to the latter, that a fallacy creeps into the mind. The case of *The Overseers of Gibson* v. *The Overseers of Nicholson*, 2 *Serg. & Rawle*, 422. decided at *Sunbury*, which, at first view, seems to establish the principle, that new townships may be bound on principles of representation, is perfectly consistent with the docrine I advocate. There it was held, that a decree against a township on a question of settlement, will bind another subsequently erected out of a part of its territory : but there is, in this respect, an obvious difference between things *executed*, which attach to the *territory*, and things *executory*, which attach merely to the *person*. But the overseers of the old township of *Whitehall* may, by law, have held property to the yearly value of five hundred pounds, and if they actually did, what disposition did the law make of it? Exactly the same that it does of the property of every other corporation at its dissolution ; it reverted to the donors. I know not how the overseers of the new townships could pretend to succeed to it.

The order of maintenance, on which the claim of the plaintiff below was founded, was directed to the overseers of the old township of *Whitehall*, and the obligation arising from it being purely legal, and operating, not on the inhabitants, but the overseers, must, of necessity, have been extinguished along with the political existence of those overseers. Can a duty created by law, and having had no previous existence, be otherwise than commensurate, in duration, with the ability to perform it? The law never creates a duty without at the same time providing an agent or the means necessary to perform it. That the active duties of a corporation should outlive it, is what I cannot comprehend. Such a state of things is never contemplated by the law, for every corporation is supposed to be capable of enduring forever, unless it is expressly limited by the power that created it. It can have no successor, though an individual corporator may : and where it is in fact of limited duration, an express provision is necessary to enable it, after the period of its dissolution, to close its concerns. To sustain this suit it is necessary to consider the old township as extinct, and the parties here as its personal representatives.

That the dissolution of a corporation is also a virtual dissolution of all its responsibilities, is supported by good authority. In the *Bishop of Rochester's case*, 6 *Vin. Abr. Corporation*, *H.* 3. *pl.* 8. which is in all respects analogous to the present, the plaintiff brought a writ of annuity against the *Dean and Chapter of R*, and counted of an annuity by prescription from the *Prior of St. Andrews of R.*; which priory was dissolved the 28 *H.* 8. and 31 *H.* 8. and *their possessions were committed by the king to the Dean and Chapter of R:* and *Anderson* said the annuity does not remain, for it charges the *party*, and not the *possession*, and therefore, when a corporation is dissolved, which is the *person*, the annuity *is gone;* and, finally, of this opinion was the whole Court; though it seems to have been agreed, the result would have been different if the corporation had been only changed. In the case before us the old corporation cannot be supposed to have merely been changed, for the *identity* of the body was not preserved. Its *unity* was destroyed. The act of the 24th *March*, 1803, gives the sessions power "to erect new town-" ships, *to divide any township already erected*, or to alter the "lines of any two or more adjoining townships." In the first and third instances, the individuality of all pre-existent bodies remains : but in the second, where there is a division of what was a unit, and each fragment takes a new name, and bears the same relation to the whole, the individuality of the old body is lost, being superseded by two distinct new bodies, each equally removed from the old. It has been expressly decided, that the creation of a new corporation after the determination of the old, makes another body ; so that rent charges and annuities payable to the old corporation are extinct by the death of all the members, as monks, &c. 6 *Vin. Abr. Corporation, I. pl.* 6. and it has been held that when an integral part of a corporation is gone, and the corporation has no power of restoring it, or of doing any corporate act, the corporation is so far dissolved, that the crown may grant a new charter. So, wherever a corporation is made for a particular purpose, and the members divest themselves of all right, *so that they cannot answer the end of their institution*, it is thereby dissolved, 6 *Vin. Abr. Corporation, I. pl.* 23. But it is useless to cite cases to shew that the corporation of the overseers of the poor of *Whitehall* was legally dissolved,

1817.

The overseers of the poor of the township of NORTH WHITEHALL. *v.* The overseers of the poor of the township of SOUTH WHITEHALL.

for the suit is founded on an express assumption of that very fact.

The sum of the matter, then, is, that as a corporation can owe no duties but such as are strictly personal, those duties cease the instant the law destroys the person, which, alone, has the power of performing them. But if the order to the overseers of the old township descended as a duty on its off-spring, the pauper must necessarily have power to compel performance of it; for a legal duty which the party may perform or not, at his option, is no duty at all. It is said he may have an action. That I doubt. But if it even were so, he might starve in the mean time. I therefore think the support rendered by the plaintiff was merely voluntary, and that the defendant cannot be compelled to contribute. Beside, such a suit as this, instead of answering the intentions of equity by enforcing contribution to what might, at first, seem a general charge, would, sometimes, cause the most obvious injustice. In divisions of this kind, it is often found indispensable to include a part of some adjoining township, which is suffered to exist without suffering further change than what results from the loss of the portion of its territory included in one of the new townships. Now, it would be plainly un-just, that the portion thus amalgamated with a fragment of a former township, should contribute to the support of such of the poor of the former township as had gained a settlement out of the limits of the territory of the new township, to which such portion is united: for that would render it liable to support the poor of a territory with which it never had any civil connexion, and yet such a result could be avoided in no other way than by making a discrimination in the assessment; a matter absolutely impracticable. There are many other cases of inconvenience, if not injustice, that must necessarily arise from the continuance of corporate responsibility beyond the term of corporate existence.

By considering the case of the pauper provided for (as it seems to me it is) in the second section of the very act under which *Whitehall* township was divided, every difficulty is avoided. It provides, that if the last legal place of settlement of any person shall be in any township divided by the act, and such person "shall become chargeable *after the divi-* "*sion*," he shall be supported by that township within the territory of which he resided at the time of gaining the settle-

ment. The objection is, that the pauper became chargeable
*before* the division, and is therefore not within the terms of
the law. But that is assuming the very question to be de-
cided. What is to prevent him from becoming chargeable
a second time? The instant he obtains an order of mainte-
nance he brings himself within the letter of the act, which is
silent as to his having been chargeable before the division.
But in a case of this kind, which I am sure is within the
spirit and meaning of the statute, I care little about the let-
ter. When the legislature attempt by positive enactment to
establish a system, whether comprised in a single statute, or
in many, passed at different times, after experience and ma-
ture reflection may have pointed out various omissions, they
can do little more than mark the outline; the rest must be
added by the Courts, who may as well refuse, at once, to
execute the law altogether as set out with a determination to
adhere to the letter. Every one knows, that it is impossible
for the framer of a bill, meant to contain nothing but the
broadest and most abstract principles, to drive from his
mind some single imaginary case, that is always found to
have got possession of it, and on which the bill, with all its
details, is constructed. Hence the difficulties that perpetual-
ly arise in the application of the law to cases differing, in cir-
cumstances, from that, which the person who penned the
act, particularly had in view; but in giving a construction
the Courts will never hold the law applicable, only to such
cases as it is found to fit in every particular. Now I admit,
that the case immediately in the view of the person who drew
this section, was that of a pauper becoming chargeable after
the division of the township, and not before; and I also ad-
mit, that it may not have occurred to him, that the poor ac-
tually chargeable to the old township would, at its dissolution,
stand in need of exactly the same provision that was necessa-
ry for those that should become chargeable afterwards. But
as there are two ways of dividing a township, one, where a new
one is erected, leaving the individuality of the old township
untouched, and another, where its identity is destroyed by
erecting its whole territory into two or more new townships,
I am of opinion, the clause about becoming chargeable after
the division may also have been, and probably was, meant to
confine the provisions of the section to the latter case, and to
ndicate, that where a pauper has become chargeable to a

1817.

The overseers
of the poor of
the township
of North
Whitehall
*v.*
The overseers
of the poor of
the township
of South
Whitehall.

1817.

The overseers of the poor of the township of NORTH WHITEHALL v.

The overseers of the poor of the township of SOUTH WHITEHALL.

township, which, although divided, is still suffered to exist, he shall remain a charge on it, although he may have gained his settlement within the limits of the portion erected into a new township. The principle of each section bearing the burden of its own poor is applicable only to cases where the very act of division, by destroying the corporate organ of relief, has rendered further provision absolutely necessary; but then it is applicable in its full extent. It never could have been intended, that those actually chargeable at the division, should be left to an action against the supervisors of the new townships; and I do not understand, that it is pretended they could have any other remedy. I know not how any Court could compel them to obey an order to which they are not parties. The plain intention of the section, was to remove all doubt as to which of the new townships shall give relief to a pauper having a settlement within the bounds of the old township, where relief is necessary by his becoming chargeable after the division of the old township, or being left without adequate support by its being broken up. Why should the legislature, in directing that each fragment of an old township should support its own appropriate poor, discriminate between those who had received relief before, and those who had not, when, as to all purposes of further maintenance, a pauper, whose connexion with the former township has been dissolved by the civil death of the latter, is put precisely in the situation in which he would have been if it had never existed. It cannot be said he remains chargeable to a township which has ceased to exist, and if he is to receive relief at all on the score of the old settlement, it is more convenient, as respects the mode of administering it, as well as more consonant to the principle established by the legislature, that he should be put on a footing with those who became chargeable only after the division. For these reasons, I am clear, the action for contribution cannot be sustained, but I perfectly concur in the other points in the cause.

DUNCAN J. The overseers of *South Whitehall*, declare in *assumpsit*, against the overseers of *North Whitehall*, for money laid out and expended for them at their special instance and request. The facts were, or at least, the evidence of facts, which were properly left to the jury, that a certain pauper, who by her birth gained a settlement in the township of

*Whitehall,* was made chargeable to that township by an order of relief, obtained from two justices of the peace, and was relieved by the overseers of that township. That, after she so became a charge, this township was divided by the Court of Quarter Sessions, and the districts composing it, were denominated, *South Whitehall* and *North Whitehall.* The pauper's residence was in the part of the district, now called *South Whitehall.* The overseers of *South Whitehall* continued to support the pauper after this division; and the action is brought to compel the overseers of *North Whitehall,* to contribute their just proportion of the money expended by *South Whitehall,* in support of the pauper after the division. And the question raised on the record is, are they so liable in this form of action? This depends on the legal obligation of *North Whitehall;* for if it is only an imperfect obligation, the law will not imply a promise. But I am of opinion, that the law confers a right; conferring a right, it gives a remedy; when there is a right to demand payment, the law implies a promise. Where once the existence of a right is established, the Court will adopt a suitable remedy, except under particular circumstances, when there are no legal grounds to proceed upon. Here the only difficulty would be the apportionment of the proportion to be borne by *North Whitehall.* But it is capable of ascertainment on equitable principles; and their action, which is in the nature of a bill in equity, would appear a proper remedy. The overseers of the poor of *Whitehall* were a corporation, though without a seal. The individuals composing the whole body corporate, were the taxable inhabitants of the whole district. They became chargeable with the support of the pauper; and they continued so, as long as she remained incapable to support herself. This was a burden; an incumbrance on the whole; a continuing lien.

By the division and change of the name, was this incumbrance, this legal obligation extinguished? For if this were the case, then the obligation to support the pauper either by *North* or *South Whitehall,* was likewise extinguished, and the pauper must starve. I do not think this division and change of name, could be attended with this distressing consequence. If the change of name destroyed the obligation on this district, it must likewise have destroyed all the rights, all the property, all that they held by grant or devise.

1817.

The overseers of the poor of the township of NORTH WHITEHALL v. The overseers of the poor of the township of SOUTH WHITEHALL.

The overseers
of the poor of
the township
of NORTH
WHITEHALL
v.
The overseers
of the poor of
the township
of SOUTH
WHITEHALL.

A corporation by changing its name does not lose its franchises. 1 *Saund*. 344. 4 *Co.* 87. *Lutterell's Case*. So where the corporation is disabled to act, and accepts a new charter, the ancient corporation is not dissolved, but dormant; and after such acceptance, is the same corporation as before. 1 *Black. Com.* 591. It is held in the case of *Colchester* v. *Seaber*, 3 *Burr*. 1866. that where a corporation accepts a new charter, it remains the same as it did before; for if it were dissolved, the lands granted to it would revert to the donor, and the new charter could not divest the rights and regrant them to the new corporation. The corporation shall retain under its new name, the possessions it had before, and shall recover by the new name a debt due before; on the other hand, it shall be subject to bonds and annuities as before. 1 *Saund*. 344. *Note* 1. So this would hold in the case of a private association, a bond given by the clerk for the faithful execution of his duties, might, notwithstanding the change of original holders in such association, be recovered. This pauper had a vested right by law, to compel a support, by virtue of her settlement, and the order of relief. A division by consent, or by order of the Quarter Sessions, or a change of name, could not take away this right or impair it. In law, and in equity, the whole taxable inhabitants for their rateable proportion, remained liable. As the pauper continued to reside in, and be supported, by the inhabitants of a part of the district; they had a legal right to contribution, which could only be enforced by this action; unless a different arrangement had been made, as to the division and support of the poor, on the division of these townships, or some special provision by act of assembly. It may be compared to the change of firm; of the name of the firm; to the dissolution of partnership. If one is called on after such change of name, or dissolution, and pays an existing obligation, the others are bound to contribute; the obligation is neither changed nor extinguished.

Both parties call in aid the 2d section of the act of 24th *March*, 1803; which provides, that " if the last legal place of " settlement of any person under the poor laws, now is, or here- " after shall be, in any township divided by this act, and such " person shall *become chargeable* after the division thereof, " he shall be supported by the township, within the territory " of which he resided, at the time of gaining the settlement."

This case does not appear to be provided for by this act. The pauper did not become chargeable after the division, but before. Become chargeable is, originally chargeable. The poor person, before the order of relief or of removal, is one likely to become chargeable to a township; he is not chargeable; that is, the township is not bound to support, nor the overseers to receive him, until an order is obtained. If the case required it, the argument to be deduced from this provision, would appear strong in favour of the defendant in error; for if the legislature intended that the territorial residence should designate the township which was to support, surely they would so have said. From the silence as to the liability, when the pauper had become chargeable before the division, it is a fair implication of the view of the Legislature, that the whole original territory, originally made chargeable before, should continue to support the pauper. No new order could be made. Where would you remand the pauper to? If the former decisions of the Quarter Sessions were clearly erroneous, this Court would not be governed by the decisions which have been made; yet a practice not clearly unwarranted by law, in a case circumstanced as this is, is worthy of some consideration. There was some evidence to inform the jury, as to the *pro rata* contribution. It was not excepted to. If it had, it might have been supplied by the production of the county rates and levies. The Court left this to the jury; and I cannot say this was error.

It seems now settled in several of the states, and in the Supreme Court of the *United States*, that an implied *assumpsit*, will lie either for or against a corporation. In *Pennsylvania*, where corporations abound; where so much is accomplished by these incorporated associations; where almost all their contracts are simple contracts not under seal, there would, I presume, be no difficulty in adopting this most convenient and necessary doctrine. If it is not extended to overseers of the poor, they can make no binding contract, for they possess no public seal.

My opinion therefore is, that this judgment be affirmed.

1817.

The overseers of the poor of the township of NORTH WHITEHALL *v.* The overseers of the poor of the township of SOUTH WHITEHALL.

Judgment affirmed.