Seagraves *v.* The City of Alton.

---

DANIEL SEAGRAVES, Plaintiff in Error, *v.* THE CITY OF ALTON, Defendant in Error.

ERROR TO MADISON.

By the act incorporating the city of Alton, it was enacted, that the common council should provide for and take charge of all paupers within the limits of said city, in consideration for which, certain privileges and equivalents were granted to the city: —

*Held,* that the obligation to support paupers was a legal one, and might be enforced against the corporation; and that it became the duty of the city authorities to provide for the support of paupers within the city.

Where the law imposes an obligation on a corporation, which it refuses to discharge, it may be held liable civilly at the suit of a party who sustains damage in consequence of its refusal.

An action of assumpsit may be maintained against a corporation upon an implied contract.

Except in extreme cases, a corporation cannot be made responsible to an individual for relief granted to a pauper, until an opportunity has been afforded the corporation to make the necessary provision.

A corporation must first be put in default, before it will be held liable upon an implied contract.

If a corporation does not provide, after notice, for a comfortable support of paupers, individuals may supply their necessities, and look to the corporation for remuneration.

The case of Rouse *v.* The County of Peoria, 2 Gilman, 99, reviewed, and questioned in part.

THIS is a suit which was brought by plaintiff in error, against the defendant in error, at the March term of the Madison Circuit

Seagraves v. The City of Alton.

Court, 1849, for the recovery of pay for the support of one Burrell Reeves, who was a pauper, living and residing in the city of Alton. Heard before UNDERWOOD, J.

There are three counts in the declaration in assumpsit.

The first count alleges that, on the 1st day of February, 1849, the city of Alton was indebted to the plaintiff in the sum of $350, for the board, lodging, washing, clothing, medicine, and taking care of said Reeves, for the space of eighty-six weeks, at special instance and request of defendant; and thereupon defendant undertook, &c.

The second count alleges that, on the 1st of July, 1847, and from that time to the bringing of the suit, one Burrell Reeves was a pauper in the city of Alton, and had been for a long time before then, to wit, for the space of ten years, and wholly unable to support or provide for himself; and being such pauper, was a proper charge upon said city of Alton, for support and subsistence; and that said plaintiff had, from the said first day of July, 1847, to the 1st day of February, 1849, supported the said Reeves with board, lodging, washing, clothing, and nursing in sickness, for the space of eighty-six weeks, at the instance and request of defendant; and in consideration thereof, the defendant undertook and promised to pay what plaintiff deserved to have therefor, &c. ; and that he deserved to have $3.50 per week whilst he so kept said Reeves, of which defendant had notice, &c.

The third count charges that, on the 1st day of February, 1849, in consideration that plaintiff had, at the special instance and request of defendant, before that time, furnished and provided meat, drink, lodging, clothing, and nursing, and other necessaries, for said Reeves, the said Reeves then and there being, and for a long time before, a pauper in the city of Alton aforesaid ; and being so indebted to the plaintiff, the defendant then and there, in consideration thereof, undertook and faithfully promised the plaintiff to pay so much as he deserved to have ; and he averred he deserved to have the sum of $3.50, &c., and usual breaches.

To this defendant plead the general issue, and a trial was had before a jury.

The proof was conclusive, showing that Reeves was a pauper, and that the matter had been several times brought before the attention of the common council of the city of Alton.

The plaintiff below asked the court to instruct the jury as follows, to wit:

1. That if the jury believe, from the evidence, that Burrell Reeves was a resident of the city of Alton on the —— day of July, 1837, the day of the passage of the charter, and that he has resided therein from that day to the 1st of February, 1849, and that during that time, or any portion thereof, he has become a pauper, (that is, a poor person, unable to support himself, and that he had no father, mother, child or children, grandchild or grandchildren, brother or brothers, sister or sisters, unmarried, of sufficient ability, to support him); and that he was brought to the house of the plaintiff for support; and that he gave notice to the common council of the city of Alton, and requested them to support such pauper; and that the said common council neglected or refused to provide the necessary support for him, and that the plaintiff provided the same, and it was necessary for said pauper, they are bound to find for the plaintiff what he reasonably deserved to have, for such support.

2. That if the jury believe, from the evidence, that said Reeves was a poor person, residing in the city of Alton, and that he had become unable to support himself from bodily affliction; and that he had none of those persons described in the statute who are required to maintain their poor kin, and that he, the said Reeves, was brought to the house of the plaintiff wholly destitute; and that he notified the common council of the city of Alton of that fact, and requested the same to furnish him with the necessary support; and that the said city, by her agents, did supply the said Reeves for any length of time, as such pauper; and that afterwards the said common council of said city, knowing of the destitution and inability of the said Reeves to support himself, neglected and refused to provide for him; and that the plaintiff furnished such necessary support as his condition required, they are bound to find for the plaintiff, and assess his damages to such a sum as the support was reasonably worth, so furnished by him.

Seagraves *v.* The City of Alton.

3. That if the jury believe, from the evidence, that the plaintiff furnished meat, drink, and raiment for the said Burrell Reeves, such as his necessities required, and that he was a pauper, (that is, a person without property, or ability to support himself,) after having notified the common council of the city of Alton of his situation, and requested the same to provide for him a support; and their refusal or neglect to provide the same for him, they must find for the plaintiff such reasonable sum as his meat, drink, and clothing were reasonably worth.

4. That if the jury believe, from the evidence, that the common council have neglected to provide, by ordinance or otherwise, for the support of the paupers in the city of Alton, and that the said Burrell Reeves is a pauper who is unable to support himself, from bodily infirmity, and that the common council for the city of Alton was notified of that fact, and neglected to provide for him such necessary support, and that the plaintiff furnished the same for him, they are bound to find for the plaintiff such reasonable sum as the support so furnished was reasonably worth.

Which instructions were refused by the court, and a bill of exceptions taken thereto.

And the defendant asked the following instructions, which were given:

1. That unless the jury believe, from the evidence, that Burrell Reeves was a pauper, and that the defendant, or its authorized agents, made a special contract with the plaintiff, to support, or render service to him (the said Burrell Reeves,) they must find for the defendant.

2. That if the jury believe, from the evidence, that any members of the Pauper Committee of the city of Alton gave money to the plaintiff, merely as a gift for taking care of Burrell Reeves, it is no evidence of a contract, and the fact of the city paying them back the money is not sufficient evidence of a special contract for his support.

3. That unless the plaintiff has proved that the proper officers of the city of Alton requested the plaintiff to render the services for which he has sued, then the jury should find for the defendant.

4. That if the jury believe, from the evidence, that the plaintiff rendered the services mentioned in the declaration, at the express request of the proper officers of the city of Alton, then they must find for the plaintiff; which said instructions were given as the law, and exceptions taken thereto by the plaintiff.

And the jury returned a verdict for the defendant.

Thereupon the plaintiff moved the court for a new trial, and assigned his reasons.

Seagraves brings the cause to the Supreme Court, and assigns errors.

Seth T. Sawyer, for plaintiff in error.

Billings & Parsons, for defendant in error.

Treat, C. J. The 9th section of the " Act to incorporate the city of Alton," approved the 21st of February, 1837, contains this provision : " The common council shall provide for, and take charge of, all paupers within the limits of said city ; and to accomplish this object, they shall have the exclusive right, power, and authority to license and tax all ferries, taverns, merchants, auctioneers, pedlers, grocers, venders of spirituous liquors and wines, other public houses of entertainment, theatrical and other shows and performances, within the limits of said city."

This provision imposes on the city the duty of supporting the paupers within its limits, and grants it in return an ample equivalent. The obligation is a legal one, and may be enforced against the corporation. It is enjoined by positive law, and its observance does not rest in the discretion of the corporate authorities. The general provisions of the statute declaring who shall be considered paupers, and requiring their relatives, when of sufficient ability, to maintain them, are applicable to the city of Alton; but the particular directions of the statute to overseers of the poor and justices of the peace in regard to paupers, have no force within its limits. Upon the passage of the charter, the county of Madison ceased to be liable for the support of paupers in the city; and the county authorities had no longer any superintendence or control over them. It became the duty

of the common council to make competent provision for the sup-
port of paupers within the city.  But a failure on their part to per-
form the duty will not absolve the corporation from responsibility.
Where the law imposes an obligation on a corporation, which
it refuses to discharge, it may be held liable civilly at the suit of
a party who sustains damages in consequence of its refusal.  In
legal contemplation, a corporation assumes to perform what its
charter enjoins upon it, and it is subject to answer in a proper
action for its default.  And the law is now well settled, however
it may have been formerly, that an action of assumpsit may be
maintained against a corporation upon an implied contract.
The Bank of Columbia v. Patterson's Administrator, 7 Cranch,
299; Danforth v. Schoharie Turnpike Co. 12 Johns. 227; Over-
seers v. Overseers, 3 Serg. & Rawle, 117; The Baptist Church
v. Mulford, 3 Halstead, 182.

It is undoubtedly competent for the corporation to make such
provision for the support of its paupers, as it may deem advisa-
ble.  It may establish a poor-house for the purpose, and take
charge of the paupers directly; or it may contract with indivi-
duals to support them, at a stated compensation.  But she
must, in some way, make adequate and reasonable provision for
their maintenance.  And, except in extreme cases, she cannot
be made responsible to an individual for any relief granted to a
pauper, until an opportunity has been afforded her to make the
necessary provision.  It is only upon her refusal or neglect so to
provide, after a proper request has been made for the purpose,
that she can be held liable in a civil action.  An individual has
not a right to render services, or provide food or raiment for a
pauper, at the expense of the corporation, until her authorized
agents have been notified, and have failed to furnish the neces-
sary relief.  It is only when the corporation is clearly in default,
that she can be held liable upon an implied contract.  It is pos-
sible that cases may occasionally arise, where services may be
rendered to a pauper, without a previous application to the cor-
poration, for which the party may be entitled to compensation,
such as a severe accident, requiring prompt and immediate at-
tention.  Paupers are not to be turned over to the uncertain
charities of individuals.  The law makes them a charge on the

corporation, and it is bound to provide them a comfortable support. If she will not do this in the first instance, individuals may provide for their necessities, and look to the corporation for remuneration. The case of the Trustees of Cincinnati *v.* Ogden, 5 Hammond, 23, asserts the correct doctrine on this subject. In that case, Ogden supplied a pauper with necessaries, after an unsuccessful application to the trustees, and then brought an action of assumpsit against the township to recover compensation. The court said, " The next question to be examined is, whether an individual, who has furnished necessaries to a pauper, can maintain an action against the township. The solution of this question must depend upon the nature of the obligation, which rests upon a township to support its poor. If it be merely in the nature of a moral obligation, then no action can be maintained, unless there has been a previous request, or an express promise on the part of the township. But if, on the other hand, it be an absolute legal obligation, then the law implies a promise, and an action can be sustained. We are of the opinion that it is of this latter description. The supreme power of the State, by legislative enactment, has imposed the obligation. It is of as much binding force as the obligation of a parent to support his child, or a husband his wife. We do not say, that in every case, where an individual furnishes necessaries to a pauper, he can maintain an action against the township. Complaint must, in the first instance, be made to the overseers of the poor. If these neglect their duty, or if the trustees of the township refuse to make the necessary order, it is right and proper for an individual to furnish a distressed pauper with the necessary relief, and justice, sound policy, and law, require that the individual performing the benevolent act should be remunerated." In Shreve *v.* Budd, 2 Halstead, 431, it was held, that an action might be maintained to recover the expenses of supporting a pauper, incurred after due notice to the overseer of the poor, and neglect by him to provide the necessary relief. In Tomlinson *v.* Bentall, 5 Barnewall & Cresswell, 738, the parish was held liable for a surgeon's attendance upon a pauper, after neglect by the parish officers to procure medical relief. See also Wennall *v.* Adney, 3 Bosanquet & Puller, 247. The de-

cisions in New York and Vermont, referred to on the argument, were made under statutes essentially different in their provisions, from the one imposing the duty on the city of Alton of supporting its paupers; and they need not be further noticed. It was decided, in Rouse *v.* The County of Peoria, 2 Gilman, 99, that a contract for the support of a pauper is not obligatory on a county, unless it is made by a majority of the overseers of the poor of the district, and reported to the County Court for approval. That was the only question in the case, and with the decision of it we are content. It was intimated, however, that where the overseers of the poor, or the County Court, refuse or neglect to discharge their duty concerning a pauper, the proper remedy is by writ of mandamus, and not by suit against the county. That expression was not called for by the facts of the case, and it cannot, therefore, be considered as a decision of the court. But it is not necessary for the determination of this case, to enter upon the discussion of the question, as the various regulations of the statute respecting the support of county paupers do not apply to the city of Alton.

In the present case, the evidence tended to the conclusion, that Reeves was a pauper, and properly chargeable to the corporation. It also clearly appeared that the plaintiff, with whom Reeves resided, made repeated applications to the city authorities for relief, which were refused. If Reeves was a pauper in fact, the plaintiff, by continuing to maintain him, pursued the course that humanity prompted, and the law approved, and he ought to be remunerated. The jury were instructed that he could not recover, unless the services were rendered in pursuance of an express contract with the corporation. This instruction was erroneous; and as it may have controlled the finding of the jury, the judgment must be reversed, and the cause remanded for further proceedings.

*Judgment reversed.*