THE BOARD OF SUPERVISORS OF LASALLE COUNTY

*v.*

CORNELIUS W. REYNOLDS.

1. COUNTIES—*liability of—for medical services rendered to persons other than paupers.* Under sec. 4 of the pauper act, a liability is imposed upon counties to pay a reasonable compensation to a person who has been legally employed to and does render medical aid to persons falling sick within the county, and having no money or property with which to pay for such services.

2. SAME—*decision of board of supervisors—as to what is a proper allowance in such cases—not conclusive.* In such cases, the obligation of the county is, to allow a reasonable compensation, and the decision of the board of supervisors as to what is a proper allowance, is not conclusive, and if a proper amount is not allowed, an action may be maintained therefor.

3. PAUPERS—*who not considered.* In such cases, persons so falling sick with a contagious disease, are not paupers within the meaning of the statute, and in an action to recover for medical aid so furnished to them, the liability of the county is not affected by the fact, that a "poor house" had been provided in the county, for the reception of paupers. Such an establishment is not designed to

receive persons afflicted with contagious disease, but only those who are technically paupers.

Appeal from the Circuit Court of La Salle county; the Hon. Edwin S. Leland, Judge, presiding.

The opinion states the case.

Messrs. Glover, Cook & Campbell, for the appellants.

Mr. H. K. Boyle, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action of assumpsit, brought to the circuit court of La Salle county, by Cornelius W. Reynolds, against the board of supervisors of that county, for $125, being his charge for medical services rendered by direction of the overseers of the poor, to William Woodbury and Orin Woodbury, who were sick with small-pox.

It was claimed, on the part of the plaintiff, that these diseased persons come within the provisions of sec. 4 of the act concerning paupers. R. S. 402, ch. 80.

The defendants pleaded the general issue, and two special pleas, which were demurred out, and on trial by the jury, a verdict was rendered for the plaintiff for $125, for which judgment was entered.

To reverse this judgment this appeal was taken.

The points made by appellants are, that it was error to instruct the jury that the fact, the account of the plaintiff had been audited by the board of supervisors, and allowed in part, was not conclusive, and that assumpsit might be brought notwithstanding; and that it was error to exclude evidence offered by the supervisors, to show that a "poor house" had been established, and ready for the reception of the poor, and that an entry thereof had been made upon the records of the board.

It is insisted by appellants, the county is not chargeable with the support of paupers within it, except by force of some statute.   It was held by this court, in the case of *The Board of Supervisors of Clay County* v. *Plant*, 42 Ill. 328, counties were so liable, and that they are bound by all contracts for the support of such persons, when legally entered into by the proper officer.   It was further held, under the township organization law, that as each town was required to elect an overseer of the poor, he alone was authorized and required to perform the duties of the office, and where such an agent has entered into a contract for the support of a pauper, the liability of the county is thereby fixed, and its agents have no discretion, but must discharge the obligation, the chairman of the board of supervisors, having, in such a case, no right, by notice or otherwise, to abridge the powers of the overseer, he deriving his powers from the law, and not from the supervisors.

The court, however, held, where an overseer of the poor should make an extravagant or improvident contract for the support of a pauper, the board of supervisors might reduce the amount to be paid, but until they act, the contract, if fair and unaffected by fraud, will bind the county.

The rulings in the case cited, are applicable, in a great measure, to this case, though the individuals to whom medicines were provided by the overseer, were not paupers in the legal sense, and so averred not to be, in the declaration.

The case is one not affected by the fact that a "poor house" had been provided.   Such an establishment is designed for paupers as such, and not for those persons comprehended in the 4th section of the act.

The declaration avers, and such is the proof, that these persons were residents of La Salle county, but not paupers, within the meaning and definition of the statute, but without money or property; that they had fallen dangerously sick of the contagious disease of small pox, and so become a proper charge

on the board of supervisors, for such assistance as was necessary. That the overseer of the poor of South Ottawa, where they resided during the time they were thus sick, complaint having been made to him, employed the plaintiff, then a physician, to render them such medical assistance as was necessary, with an averment that he did, on such employment, render all necessary medical assistance to them.

The account presented by the plaintiff for his services, being $125, was sanctioned by the overseer of the poor of the township, and approved by the supervisor of the town of South Ottawa, but when presented to the board of supervisors of the county, they reduced the allowance to $50, which the plaintiff refused to receive, and brought this suit, claiming on a *quantum meruit*.

The question is, does sec. 4 of the pauper act, impose a liability on the county to pay a reasonable compensation for these medical services? That section is as follows:

"When any non-resident, or any other person, not coming within the definition of a pauper, shall fall sick or die in any county of this State, not having money or property to pay his board, nursing and medical aid, it shall be the duty of the overseer of the poor of the proper district, or if there be none, then of the nearest county commissioner of the county, upon complaint being made, to give or order to be given such assistance to such poor person as they may deem necessary; and if said sick person shall die, then the said overseer or county commissioner shall give or order to be given to such person a decent burial; and the said overseer or county commissioner shall make such allowance for board, nursing, medical aid or burial expenses as they shall deem just and equitable, which allowance shall be laid before the county commissioners' court, and the said court shall allow either the whole or such reasonable and just part thereof as ought to be allowed, and order the same to be paid out of the county treasury."

This section imposes an obligation upon the county authorities to make a proper allowance for medical and other services. If they fail to do so, is there no remedy? Does it vest entirely with them to decide what is a proper allowance? Suppose they should allow but one dollar for such services, would any just man say, that was as much "as ought to be allowed," and no court could give more? This is absurd. The obligation is, to allow what ought to be allowed, and if they fail in this, an action arises. The board of supervisors was not a court trying a cause, whose judgment, when there was jurisdiction, would be binding, but merely acting as a board of auditors. Their decision was not conclusive.

On the remaining point, that the county was not liable, a poor house having been provided, it is sufficient to say, such an establishment is designed for those who are technically paupers, and not for poor persons accidentally smitten with a contagious disease. Small-pox patients would be dangerous inmates in a poor house. The design of this section is not to receive such patients, but only paupers as such.

The statute imposing a legal obligation on the county to provide for these persons, the law raises a promise to pay the person who has been legally employed to render services to them and does render them, such reasonable compensation as he deserves to have. *Seagraves* v. *Alton,* 13 Ill. 373.

Perceiving no error in the record the judgment must be affirmed.

*Judgment affirmed.*