# THE COUNTY OF PERRY

## *v.*

# THE CITY OF DUQUOIN.

### *Filed at Mt. Vernon June 21, 1881.*

1. PAUPERS—*as to their support—duty of municipal corporation.* The duty of supporting paupers or aiding poor people may be imposed by the General Assembly on cities or villages, as well as on counties. There is no legal presumption whether such duty is placed upon a county or a city as to paupers residing in the city, but it is purely a matter of statutory enactment.

2. SAME—*statute construed.* The proviso in sec. 14, ch. 107, Rev. Stat. 1874, in respect to the liability of counties for the support and relief of poor and indigent persons, has application only to counties under township organization, leaving the liability of all other counties for such support and relief clear and absolute.

3. SAME—*city incorporation law does not require cities and towns to support, etc.* Sections 76, 77 and 78, of art. 5, ch. 11, Rev. Stat. 1874, entitled "Cities, Villages and Towns," authorizing municipal authorities "to appoint a board of health and prescribe its powers and duties," "to erect and establish hospitals and medical dispensaries, and control and regulate the same," and "to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease," do not impose any legal liability upon incorporated cities, towns and villages for the support or relief of paupers or indigent persons residing within their limits. These sections relate solely to the preservation of health within the corporations.

4. SAME—*statute giving aid to poor persons not paupers, construed.* Section 24, of the Pauper law, in the revision of 1874, which provides for giving assistance to persons falling sick not having money or property to pay their board, etc., who are not paupers as defined by law, extends and applies to two classes of persons: first, non-residents; and, second, residents not coming within the definition of paupers. That part of the section authorizing the sending of such persons to their homes, applies only to non-residents of the county.

5. SAME—*when county fails to provide rules and regulations.* A county can not relieve itself from its legal liability to support paupers, or give assistance to indigent persons not properly paupers, who fall sick, not having the means to pay for food, nursing, etc., by refusing or neglecting to make any rules and regulations on the subject. The requirement that aid shall be furnished, "subject to such rules and regulations as the county board may pre-

scribe," does not authorize that board to prescribe unreasonable rules or regulations.

6.   This provision in the law is designed for the benefit of the county, and if the defence is interposed, in an action to recover from a county expenses incurred by a city in furnishing food, medicines, etc., to a poor person, that the aid furnished was not pursuant to the rules and regulations prescribed by the county board, it will be incumbent on the county to show that the board prescribed reasonable rules and regulations on the subject, and what they are.

7.   Where certain poor persons, not legal paupers, residing in the city of DuQuoin, in Perry county, took the small pox, a contagious disease, so that they had to be sent to the pest house provided by the city, and were not proper subjects to be sent to the county poor house, and application was made to one of the county commissioners for aid and support of such sick persons, in pursuance of a rule or regulation adopted by the county board, and he directed the city authorities to go on and furnish food, medicine, etc., promising that the county would reimburse it: *Held*, that while this was not evidence of a contract, it was evidence of a compliance with the rule prescribed by the county board, and that the county was liable to the city for the money expended by it for the food, nursing and medicines of such poor persons during their sickness.

8.   Statute—*may provide in same section for several classes.*   It can not be claimed, as a rule of construction, that a single section of a statute may not provide for separate and distinct classes of persons or cases, or that when so providing that each word in the section shall have a practical application to every person and class so provided for.   It is enough that there is language that will give practical effect to the provisions in regard to each class of persons or states of case provided for, considered separately.

Appeal from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of Jackson county.

Messrs. Murphy & Boyd Bros., Mr. S. G. Parks, and Mr. W. J. Allen, for the appellant:

1.   The county is not liable in a civil action for neglect of the county board in not appointing overseers of the poor, or for the neglect of duty by the overseers of the poor when appointed.   *Hedges* v. *County of Madison*, 1 Gilm. 567; *Schuyler County* v. *County of Mercer*, 4 id. 20; *Town of Waltham* v. *Kemper*, 55 Ill. 346; *Bussell* v. *Town of Steuben*, 57

id. 35; *White* v. *County of Bond,* 58 id. 298; *Symonds* v. *Clay County,* 71 id. 355; *Hollenbeck, Admr.* v. *Winnebago County,* 95 id. 148.

2. The defendant is a corporation, and the power of taking charge of paupers and indigent persons *is a clear statutory power,* and conferred without doubt or ambiguity.

The plaintiff is a corporation also, and there is no power in its charter giving it the right to take care of paupers and charge the county for it. This omission is significant. *Betts* v. *Menard,* Breese, Appendix, 11; Angell & Ames on Corporations, (10th ed.) sec. 256; Metcalf on Contracts, 160; 1 Dillon on Municipal Corporations, secs. 55, 381; *Petersburg* v. *Metsker,* 21 Ill. 205; Art. 5, sec. 62, p. 218, Rev. Stat. 1874.

3. The city had ample power under its charter, and ordinances passed by it in pursuance of the charter, to make sanitary rules and regulations to prevent the introduction of small pox, establish hospitals, and regulate and protect the health of the city, and take charge of the persons within its limits. Rev. Stat. 1874, p. 222, §§ 76, 77, 78 and 83.

4. There can be no implied contract raised in any case between parties incapacitated by legal disability from making an express contract in reference to the same subject matter. 1 Dillon on Municipal Corporations, secs. 383, 384.

5. We insist that a county could only be held liable or bound by the action of the overseer of the poor acting under the rules and regulations of the county board, or by the action of the county board when sitting as a corporate body. No member of the county board can, by his own act or declaration, bind the county. Sec. 24, p. 757, Rev. Stat. 1874; *County Commissioners Randolph Co.* v. *Michael Jones,* Breese, 103; *McHaney* v. *County of Marion,* 77 Ill. 488.

6. The plaintiff could not voluntarily assume and pay the obligations of the defendant, and thereby create a right of action in favor of the plaintiff against the defendant. *Deadman* v. *Williams,* 1 Scam. 154; *Francisco* v. *Wright,* 2 Gilm.

691; *City of Alton* v. *Mulledy et al.* 21 Ill. 76; *Springdale Cemetery Ass.* v. *Smith et al.* 32 id. 252; *Durant* v. *Rogers,* 71 id. 121.

Mr. ANDREW D. DUFF, for the appellee:

The general law in relation to towns and cities, giving them power to appoint boards of health, etc., creates no legal liability on cities and towns to support and provide for paupers. These are police powers resting upon the great law of overruling necessity,—self preservation. Cooley's Const. Lim. 572; *Bridgeport* v. *Railroad,* 15 Conn. 475.

Section 24 of the Pauper act, authorizing aid to poor persons not properly paupers, is not restricted in its application to non-residents, but applies also to residents. The clause, "cause him to be conveyed to his home," applies to non-residents, but this does not make the whole section so apply.

If there was no overseer of the poor, the county was in default, and could not evade the duty imposed upon it in this way; but any party capable of affording the necessary relief to those people, if they came within the provisions of section 24, was authorized to do so, and the county would be liable for the reasonable costs and expenses. *Trustees of Cincinnati* v. *Ogden,* 5 Ham. 23; *Shreve* v. *Budd,* 2 Halst. 431; *Seagraves* v. *City of Alton,* 13 Ill. 366; *Supervisors* v. *Reynolds,* 49 id. 186.

The demand sued for is just and meritorious, and the county should have paid it. The law fixes and imposes this burden on the county, (Rev. Stat. 1874, ch. 107, secs. 14, 24,) and it can not escape this legal liability by its own duplicity, bad faith or negligence. *Seagraves* v. *Alton,* 13 Ill. 366; *Board of Supervisors* v. *Plant,* 42 id. 324; *Supervisors of La Salle County* v. *Reynolds,* 49 id. 186; *Tomlinson* v. *Bentall,* 5 B. & C. 738; *Wennel* v. *Adney,* 3 B. & P. 247; *Trustees of Cincinnati* v. *Ogden,* 5 Ham. 23; *Shreve* v. *Budd,* 2 Halst. 431.

· Mr. Justice Scholfield delivered the opinion of the Court:

The city of DuQuoin brought assumpsit against the county of Perry, in the circuit court of that county, for expenses incurred in furnishing food, medicines, medical treatment, nursing, etc., for certain poor persons, in the spring of 1877. The venue was changed to the circuit court of Jackson county, and the cause being there tried, that court rendered judgment for the plaintiff. The defendant appealed to the Appellate Court for the Fourth District, and that court, after considering and hearing argument upon the errors assigned, affirmed the judgment of the circuit court. We are now to consider whether there was error in the last named judgment.

The duty of supporting paupers or aiding poor people may be imposed by the General Assembly on cities or villages, as well as on counties, and the first question on this record is, where, in the present instance, is that duty imposed? Is it upon the city of DuQuoin, or upon the county of Perry? There is no legal presumption either way, and it is purely a matter to be settled by statutory enactment.

Section 14, of chapter 107, of the Revised Statutes of 1874, provides that "every county (except those in which the poor are supported by the towns) shall relieve and support all poor and indigent persons lawfully resident therein, except as herein otherwise provided." It is not therein anywhere provided that cities or incorporated villages shall relieve and support the poor and indigent within their limits, and Perry county not being organized under the Township Organization law, the exceptions in this section can have no practical application to the present case, and the section should, therefore, be read, for the purposes of the question before us, omitting the exceptions. And when this is done, the duty upon the county to relieve and support the poor and indigent within its limits is, plainly to be seen, absolute.

Counsel for appellant claim, however, that the same duty is imposed upon cities and incorporated villages by sections 76, 77 and 78, of art. 5, of chap. 11, Rev. Stat. 1874, entitled "Cities, Villages and Towns." Those sections simply empower incorporated cities and villages "to appoint a board of health, and prescribe its powers and duties," "to erect and establish hospitals and medical dispensaries, and control and regulate the same," and "to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." How these provisions can be construed to authorize the relief and support of paupers and indigent persons we can not well comprehend. They do not profess to relate to paupers or indigent persons, but solely to the protection and preservation of health within the corporation. Undoubtedly paupers might be benefited by the exercise of such powers, but not more so than others, and then it would be not simply because they were paupers, but because they were domiciled within the corporate limits.

It is provided by section 24 of the chapter relating to paupers, before referred to : "When any non-resident, or any person not coming within the definition of a pauper, of any county or town, shall fall sick, not having money or property to pay his board, nursing and medical aid, the overseers of the poor of the town or precinct in which he may be, shall give or cause to be given to him such assistance as they may deem necessary and proper, or cause him to be conveyed to his home, subject to such rules and regulations as the county board may prescribe, and if he shall die, cause him to be decently buried."

Some question is made whether this section extends to others than "non-residents." We think it too clear to admit of serious controversy that it extends, as its language expressly imports, to two classes of persons : first, non-residents ; and, second, residents not coming within the definition of paupers, who shall fall sick not having money or prop-

erty to pay their board, nursing and medical aid. Non-residents, even when paupers, can not become public charges except upon the municipality having charge of paupers within which they are domiciled, and it is not, therefore, to be presumed that it was designed to be more liberal to non-residents falling within the terms of this section than to residents. It was necessary to expressly name "non-residents," to include them within the operation of this section, for had the language been general, it would have been construed as applicable only to those lawfully domiciled within the municipality having charge of paupers and indigent persons. Undoubtedly, some of the language of this section can have no application to those domiciled within the municipality, as, for instance, it can not be the duty of the overseer of the poor to cause those to be conveyed to their homes who are already there,—but this has reference to the non-residents, or those to whom it can have practical effect. The language is to have a rational construction, and regarded as having application to distinct classes of persons, and terms applicable to one class held to have no necessary reference to the other class. Surely, it was never claimed, as a rule of construction, that a single section of the statute may not provide for separate and distinct classes of persons or cases, or that, when so providing, each word in the section shall have a practical application to every person and class so provided for. It is the constant practice, to which no objection is known, to provide, in the same section, for different classes of persons and different states of case, and it is entirely sufficient that there is language that will give practical effect to the provisions in regard to each class of persons or states of case provided for, considered separately.

The facts in the present case show that those relieved and cared for came within the second class provided for by this section. They were not technically paupers. They fell sick of the small-pox, and did not have money or property to pay

their board, nursing and medical aid, and they were residents of the city of DuQuoin, and of the county of Perry.

At a meeting of the board of county commissioners of the county of Perry, on Wednesday, the 28th of January, 1874, overseers of the poor were appointed for each precinct of the county, but afterwards, at a meeting of said board, on the 7th of January, 1876, the following was adopted and entered of record:

"In the matter of aid for paupers.   On this day the board of county commissioners adopted the following regulations regarding paupers:

"*First*—All overseers of the poor are hereby discharged from further service.

"*Second*—All persons having in their care any person or persons who are proper subjects for admission to the county alms house, or in need of county aid or support, should report the same, without delay, to some member of the county board.

"*Third*—Physicians being called to visit any sick person, and finding such person to be in need of county aid, shall not continue to treat such person at the expense of the county, but may notify the nearest member of the county board, who will make provisions for the case; and no such physician will be allowed for more than one visit, unless employed by the county board."

These remained in force as the only regulations adopted by the county board in reference to paupers, or poor and indigent persons needing aid, until long after the occurrence here claimed to constitute a cause of action.

It is contended there can be here no liability because there was no overseer of the poor, and no rules and regulations adopted by the county board pursuant to which the food, medicines, nursing, etc., were furnished. If this be true, it furnishes a simple and effective method by which a county may relieve itself from all liability under the section before quoted. This, however, is not the law.   The original of that sec-

tion, varying in some respects from its present phraseology, but not in the respect of fixing the legal duty upon the county to give or cause to be given aid to the person falling within the terms of the section, was before this court in *The Board of Supervisors of LaSalle County* v. *Reynolds,* 49 Ill. 186, and it was held the statute imposed a legal obligation on the county to provide for the persons therein designated, and that it was not excused from discharging that duty by having provided a poor house,—a legal obligation, and not a mere discretion, being imposed upon the county.

*Seagraves* v. *The City of Alton,* 13 Ill. 366, is an authority for the position that the county could not evade the obligation by simply refusing to act. It was there said, and the language is equally pertinent when applied to the present case: "Paupers are not to be turned over to the uncertain charities of individuals. The law makes them a charge on the corporation, and it is bound to provide them a comfortable support. If she will not do this in the first instance, individuals may provide for their necessities, and look to the corporation for remuneration."

The proof in the record, and the averment in one or more counts of the declaration, are, that application was made for aid and support to one of the county commissioners, and he directed the city authorities to go on and furnish food, medicine, etc., promising that the county would reimburse it. This, although not evidence of a contract, is evidence of a compliance with the rules and regulations prescribed by the county board. The requirement that aid shall be furnished, "subject to such rules and regulations as the county board may prescribe," does not authorize that board to prescribe unreasonable rules or regulations, or to withhold aid by simply refusing to prescribe any rules or regulations. It is designed for the benefit of the county, and if the defence is interposed, in an action of this character, that the aid furnished was not pursuant to the rules and regulations prescribed by the county board, it is incumbent on it to show that the

county board prescribed reasonable rules and regulations on the subject, and what they were. If, therefore, the discharging of all overseers, and requiring that application for aid or support be made to some member of the county board be a compliance with the statute, the proof shows that it was observed. But if it be not a compliance with the statute, then no other rules or regulations are shown to have been prescribed, and hence there were none that could have been observed.

It is objected that the city had no power to incur liabilities for food, medicines, nursing, etc., which it could charge the county with, upon an implied assumpsit. The city had power, as we have seen, and it was its duty, to erect or procure hospitals or pest houses, and take measures to place therein persons infected with contagious diseases, in order to prevent the spread of disease and protect those who were not infected. The objects of the aid which was rendered in the present instance were infected with the small pox. It was the duty of the city to restrain them from going abroad; and, as was said in *Supervisors of LaSalle County* v. *Reynolds, supra,* "they could not be sent to the poor house, for they were not paupers, but poor persons accidentally smitten with a contagious disease,—small pox patients would be dangerous inmates in a poor house."

If we shall suppose the city was not justified in furnishing them with food, medicines, nursing, etc., during the period of their restraint, what was to become of them? They had no means of their own; they could not go abroad to beg alms; they could not be sent to the poor house. The county board made no provision for them, and there was no one else whose legal duty it was to provide for them. It was, in our opinion, the duty of the county board to furnish them with food, medicines and nursing, and the fact that they were, during the time, restrained within the limits of hospitals or pest houses, in nowise relieved the board of that duty. Had these persons been pecuniarily able, the liability for their

food, medicine, nursing, etc., manifestly would have been personal; but not having been pecuniarily able, the liability falls on the county. It is not imposed on the city, and yet, from the very nature of the case, the expenses had, necessarily, in the first instance, to be advanced by the city.

The judgment below is affirmed.

*Judgment affirmed.*