## County of Fayette v. J. S. Morton.

1. COUNTIES—*Rules Regarding Paupers—Must be Reasonable.*—Rules of the county board, to be sufficient to exempt the county from expenses incurred contrary thereto, must be reasonable.

2. SAME—*Construction of Rule.*—A rule which provides that no supplies or medical attendance shall be furnished to any pauper so as to charge the county, except on the order of the overseer of the poor, makes no distinction between supplies and medical attendance, and does not require an order written.

3. SAME—*Rules Fixing the Fees for Physicians.*—A rule which fixes the fees of physicians attending paupers outside of the jurisdiction of the county physician at seventy-five cents for the first mile and twenty-five cents for every additional mile to the residence of the patient includes both visits and medicines.

4. SAME—*Supplies and Medical Attendance.*—A rule which relates expressly to supplies can not be reasonably construed to relate to medical attendance.

5. SAME—*Rules Fixing Fees to Prevail.*—A rule, fixing the fees of physicians attending paupers outside of the jurisdiction of the county physician will control, and the county board has the power to pay at those rates for services rendered before the overseer was spoken to, as well as after.

6. COSTS—*Appeal from the County Board.*—An appeal from the county board to the Circuit Court is to be treated as an appeal from a justice of the peace. The same rule as to cost should be applied.

Memorandum.—Allowance of claims by county board. Appeal from the Circuit Court of Fayette County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court on appeal from the Circuit Court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

The opinion states the case.

*Rules of the county board under consideration in the case:*

1. No supplies or medical attendance shall be furnished any pauper in this county so as to charge Fayette county, except on the order of the overseer of the poor of the township where such pauper resides or may be found, except as hereinafter provided.

2. The following maximum allowance shall be made to physicians attending paupers outside of the jurisdiction of the county physician, to-wit: seventy-five cents for the first mile, and twenty-five cents for each additional mile to the patient's residence; this to include visits and medicine—except that in obstetrical treatment, treatment of fractures, and complicated surgical operations, an extra fee of five dollars be allowed.

6. No liability shall be created against Fayette county by any order or request of any overseer of the poor, unless such order or request of such overseer is in writing, with ink, on paper, signed by the overseer of the poor of the township where such pauper so is, resides, or may be found, and directed to the person requested or ordered to furnish such supplies, and, in every case, such order shall state whether such supplies have been furnished such pauper, or family of paupers, during any such quarter prior to issuing such order, and such order shall be substantially in the following form:

Township, Fayette County, Ill.,.............188..

To......................................

You are hereby requested to deliver to....................., a pauper,

(or to......................, the head of a family of paupers) provisions (or clothing) (or medicine) to the amount of......dollars, on the credit of Fayette county. This is the first order made during the present quarter for aid to be furnished this pauper (or family of paupers).

And in case where such order is for provisions, clothing, or medicine, as a second or subsequent order, the order shall recite, "This is a second (or third) order and the amount of......dollars has been heretofore furnished such pauper," the order to be signed by the supervisor of the township as overseer of the poor.

8. No order made by the overseer of the poor to create a charge on Fayette county, that is not in writing, written in ink, on paper, substantially in the form given in the foregoing rules, and reciting whether the first or subsequent order shall create a liability against Fayette county by contract.

9. Any order made by any overseer of the poor, substantially in the foregoing form, and reciting whether a first or subsequent order, and specifying the amount previously furnished in writing, in ink, on paper, and signed by the supervisor as overseer of the poor, shall, to the limit as in these rules set forth, create a liability on Fayette county for the payment of the same, and Fayette county, by this resolution of the board of supervisors, promises to pay such order upon proof furnished by affidavits, showing the goods, supplies, or aid furnished in accordance with such order.

J. M. ALBERT, state's attorney, for appellant.

HENRY & GUINN, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

From October 1, 1892, to October 25th, the wife of Elijah Crowder was sick, and from the latter date till December 13th, Elijah Crowder himself was sick, so as to require medicines and the services of a physician. Appellee, who was a regularly licensed physician, rendered such services till October 29th, when he saw the overseer of the poor for the township in which Crowder resided and obtained authority, though not in writing, to render the necessary medical aid. At the time of this conversation, the overseer stated the amount of the fees allowed by the rules of the county board in such cases, and upon appellee's insisting that he must have his customary fees, closed the conversation by directing appellee to wait on the Crowders, and by promising to do

the very best he could in relation to fees. The evidence shows that appellee resided three miles from the home of Elijah Crowder, where the latter lay sick, and that the value of appellee's services, upon a *quantum meruit*, and without reference to the rules of the board, including medicines, was the sum of $93. Appellee presented his bill to the board of supervisors. The claim was allowed at $50, which appellee refused to receive.

On appeal to the Circuit Court, the case was tried without a jury, and judgment was rendered in favor of appellee for $50 and costs. This case falls within the provisions of sections 23 and 24 of the act in relation to paupers, which are as follows:

" 23. When any poor or indigent person does not require to be supported wholly by the county, the overseer of the poor may, subject to such limitations as may be prescribed by the county board, render him temporary relief without his being committed to the care of any such person, or being sent to the county poor house."

" 24. When any non-resident, or any person not coming within the definition of a pauper, of any county or town, shall fall sick, not having money or property to pay his board, nursing and medical aid, the overseers of the poor of the town or precinct in which he may be, shall give, or cause to be given to him, such assistance as they may deem necessary and proper, or cause him to be conveyed to his home, subject to such rules and regulations as the county board may prescribe, and if he shall die, cause him to be decently buried."

It is contended in this case that at the time when the medical aid was rendered to the Crowders, certain rules prescribed by the county board were in force, whereby no claim for such services could be asserted against the county unless an order written with ink on paper had been given by the overseer of the poor before the services were rendered, authorizing the rendering of the services, fixing the amount thereof in dollars, and stating whether it was the first or a subsequent order during the quarter. In the absence of any of these formalities, the patient must suffer from typhoid

fever or any other malignant disease, without the relief of medical aid, unless some humane physician should see fit to render his services gratuitously. If one should be stricken down with apoplexy on the highway, let the physician wait until the overseer could be found, until pen, ink and paper could be brought, and an order written with ink on paper authorizing the physician to assist to the amount of $2 or $5 as might appear to the overseer to be sufficient for the emergency. We think a fair construction of the rules of the county board can be made which will not leave them open to this or similar criticism. The rules which are sufficient to exempt the county from expenses incurred contrary thereto, must be reasonable. County of Perry v. City of Du Quoin, 99 Ill. 479. Therefore, if a construction of such rules can reasonably be made which will free them from the taint of unreasonableness, it is the duty of the court to make such construction and in the light thereof to sustain the rules.

The first rule provides that no supplies or medical attendance shall be furnished to any pauper so as to charge the county, except on the order of the overseer of the poor. This rule makes no distinction between supplies and medical attendance, and does not require an order written with ink on paper.

The second rule fixes the fees of physicians attending paupers outside of the jurisdiction of the county physician, at seventy-five cents for the first mile and twenty-five cents for every additional mile to the residence of the patient, which fees include both visits and medicines.

The third rule, which relates to the treatment of patients within the jurisdiction of the county physician, need not be considered, inasmuch as there is no evidence to show that there was a county physician when the Crowders were sick, or that they were within the jurisdiction of the county physician, if there was such a physician.

The fourth and fifth rules relate expressly to supplies and can not be reasonably construed to relate to medical attendance.

The sixth rule provides that no liability shall be created against the county by any order or request of the overseer of the poor, unless the same is in "writing, with ink, on paper," signed by the overseer, and directed to the person requested or ordered to furnish "such supplies." This rule clearly refers to the supplies mentioned in the fourth and fifth rules. If there were any doubt on this point, it would be dispelled by the perusal of the form of the written order as given in the sixth rule, which is for the delivery to the pauper of " provision, or clothing, or medicine, to the amount of $——, on the credit of Fayette county." The word "medicine" would include medicine furnished by a physician or druggist, but not the visit or attendance of a physician.

The seventh rule divides the year into quarters and has no bearing upon this case.

The eighth rule provides that an order which is not written with ink on paper shall not create a liability against the county by contract, while the ninth rule is a promise to pay for goods, supplies or aid furnished pursuant to such a written order. These provisions are properly construed as referring to the matters embraced within the fourth, fifth and sixth rules, and not to the medical attendance mentioned in the second rule.

We think, however, that the fees established by the second rule should control in this case. We are of the opinion also that the county board had the power to pay at those rates for services rendered before the overseer was spoken to as well as after. The language of the eighth rule, " shall not create a liability against the county by contract," even if this should be held to apply to medical attendance, indicates the reservation of the power on the part of the board to do equity and justice voluntarily, where there may not have been a strict compliance with the requirements of the rules. The board in this case exercised that power by the allowance of this claim at $50, and we can not say that the Circuit Court erred in affirming this allowance. Nor can it be shown that the county is not bound by the action of the board, for the powers of the county are exer-

cised by the county board (Illinois Statutes, Chap. 34, Sec. 23), and the county board has power to examine and settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county. (Illinois Statutes, Chap. 34, Sec. 25.)

We think the Circuit Court erred, however, in taxing the costs against appellant. In O'Reer v. Strong, 13 Ill. 688, it was held, that where the plaintiff, in a case before a justice of the peace, appeals, and the judgment is affirmed, the Circuit Court should charge the plaintiff with the costs of the appeal. This decision was followed in McConnell v. Beathard, 16 Ill. 132. In such case the party appealing is the unsuccessful party in the Circuit Court, and should be charged with the costs under Sec. 20 of Chap. 33 of the Statutes of Illinois.

An examination of sections 35, 36 and 37 of chapter 34 of the Illinois Statutes, will show that an appeal from the county board is treated as an appeal from a justice of the peace. The same rule as to costs should be applied.

The cross-errors assigned insist in terms or effect upon a recovery of $93 upon a *quantum meruit*. Upon this point we have held adversely to appellee. Even if the value of appellee's services, when computed under the second rule, should be more than $50, yet he could not take advantage of this fact under the present assignment of cross-errors.

The judgment is reversed and the cause is remanded with directions to the Circuit Court to render judgment in favor of appellee for $50, and the costs of the claim before the county board, and in favor of appellant for the costs in the Circuit Court.