## City of Chester v. County of Randolph.

1. POOR PERSONS—*duty of county to render medical aid to.* It is the duty of a county to render medical aid to sick persons who do not come within the definition of paupers but who have not money to pay for such services, and this notwithstanding such county may not have appointed overseers of the poor and may not have adopted rules and regulations for the giving of such service.

2. MUNICIPALITY—*when, may recover of county for money expended in giving aid to sick persons.* Where a city has caused medical service to be rendered to a poor person, who should have been cared for by the county, and has paid for such service, it may recover from such county the amount so expended, if reasonable, where it appears that the city had notified one member of the board of county commissioners that it had taken charge of such person; and a promise by the county to pay for such service is not essential to its liability.

City of Chester v. County of Randolph.

Action of assumpsit. Appeal from the Circuit Court of Randolph County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the August term, 1903. Reversed, and judgment here. Op nion filed March 10, 1904.

ALEXANDER HOOD, City Attorney, for appellant.

A. E. CRISLER, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit by the city of Chester against the county of Randolph, to recover $154.50, the amount of two physicians' bills paid by appellant, for medical services in attending small-pox patients who were residents of, and received such services in said city and county. The case was tried by the court below without a jury, and the issues were found and judgment given in favor of the county.

The proofs showed that Dr. A. E. Fritze was, in September, 1901, called to attend a Mrs. Brown, in the city of Chester and found her suffering from small-pox; that he reported the case to the city authorities and the mayor told him to attend the patient, which he did; that after her recovery her husband was taken sick and Dr. Fritze treated him until he got well; that within a few days after the doctor took charge of the case, he reported the same to one of the county commissioners, and the commissioner said it was all right. The other case was that of one Neville, who was attended by Dr. A. D. Steele, and it appeared from the proofs that the case was reported by the doctor to the board of health of the city, and the mayor instructed him to look after the patient; that Dr. Steele obtained a vacant house for a pest-house, took Neville to it and attended him until he got well; that two or three days after taking charge of the case the doctor, who was also physician at the county farm, notified two of the county commissioners that he was attending Neville, who was ill with the small-pox, and that the latter's relations refused to take care of him, but that the commissioners gave him no instructions in regard to the matter. It was admitted by the parties on the trial, that the services of the physicians were rendered; that their

charges for the same were reasonable, and that such charges were paid by the city. There is in fact no material controversy whatever in the evidence. The city presented its bill to the county for payment, but the county denied its liability and refused to pay the same.

The county of Randolph is not under township organization, and it is conceded that no overseers of the poor had been appointed, but that the commissioners were themselves discharging the duties of such officers. There was an order of the board in existence at the time the services in this case were rendered, which provided, " That when a physician is called upon to visit a sick pauper, that they will receive pay for one visit only to said' sick person and no more unless ordered by some member of the board." Section 24, chapter 107, of the Revised Statutes, provides, that, " When any non-resident or any person not coming within the definition of a pauper of any county or town, shall fall sick, not having money or property to pay his board, nursing or medical aid, the overseers of the poor of the town or precinct in which he may be, shall give or cause to be given to him such assistance as they may deem necessary and proper or cause him to be conveyed to his home, subject to such rules and regulations as the county board may prescribe," etc.

The persons treated by the physicians were not shown to have been paupers within the meaning of the statute, although it appeared from the proofs that they did not at the time have money or property to pay for the services rendered them. As the commissioners had failed to avail themselves of the right given them by the statute to appoint overseers of the poor and were acting in that capacity themselves, it was their duty to render the necessary assistance to such patients. The statute indeed prescribes that such assistance shall be rendered " subject to such rules and regulations as the county board may prescribe," but so far as it appears from the record, the board had no rules in reference to furnishing physician's services, except the one above referred to, which provided for services to paupers alone, and as the patients who were assisted in this case were not paupers, that

rule could not apply to them. In the County of Perry v. City of DuQuoin, 99 Ill. 479, which was similar in many respects to the case before us, the court held, that the county was not relieved from liability because there was no overseer of the poor and no rules and regulations adopted by the county board, pursuant to which the food, medicines, nursing, etc., were furnished.

It is argued by appellee that the county board had no notice of any intention to hold the county liable for the physicians' services until the claims were presented by the city for payment, some time after the patients had recovered. It appears from the proofs, however, that one member of the county board was notified by Dr. Fritze and two members by Dr. Steele, of the fact that they had taken charge of the small-pox patients. As the members of the board were acting as overseers of the poor, it was not necessary, to bind the county, that the board should be in session when they received the notice, but a notice to any one of the members was sufficient. Nor was it necessary that the member or members notified, should indicate an intention or a willingness to pay for the services proposed to be rendered by the physicians. In County of Winnebago v. City of Rockford, 61 Ill. App. 656, a judgment was sustained against the county and in favor of the city for expenses incurred by the city, in giving assistance to small-pox patients, although the county authorities had refused, when notified, to have anything to do with the cases.

The patients in the case before us, came within the rule which entitled them to county aid in their sickness, and the county cannot avoid its liability on the ground that the commissioners when notified that assistance was about to be rendered, did not promise to pay therefor.

The judgment of the court below is reversed and, as there is no controversy concerning the facts, judgment will be entered here against appellee for $154.50, the amount of appellant's claim, together with the costs of the suit in this court and in the court below.

*Reversed, and judgment here.*