Rockford Memorial Hospital Association, Plaintiff-Appellee, v. Glendon J. Whaples, Elaine Whaples, Town of Chemung, a Municipal Corporation, Defendants, Town of Chemung, a Municipal Corporation, Defendant-Appellant.

Gen. No. 11,347.

Second District, First Division.

March 22, 1960.

Released for publication April 8, 1960.

McCauley and Weir, of Harvard, for appellant.

Pedderson, Menzimer, and Conde, of Rockford, Eckert, Caldwell, and Gleason, of Woodstock (Dale F. Conde, of counsel) for plaintiff-appellee.

JUSTICE DOVE delivered the opinion of the court.

Rockford Memorial Hospital Association brought this action against Glendon J. Whaples, Elaine Whaples, Ray E. Lush, Supervisor of the Town of Chemung, McHenry County, Illinois, and said Town of Chemung, a municipal corporation, to recover for hospital services rendered Ruth Whaples, minor daughter of the defendants, Glendon and Elaine Whaples. The issues made by the pleadings were submitted to the court without a jury. At the conclusion of the evidence the action was dismissed as to Ray E. Lush, Supervisor, and thereafter the court rendered judgment in favor of the plaintiff and against the remaining defendants for $845.45 and costs. To reverse that judgment the Town of Chemung appeals.

The record discloses that the defendants, Glendon Whaples and Elaine Whaples are husband and wife, and with their four children lived from about the first of April 1957, until February 22, 1958, in Harvard, Town of Chemung, McHenry County, Illinois. In November 1957, Ruth Whaples, then four years old, one of the children of Mr. and Mrs. Whaples was ill with, what her mother termed, "asiatic flu." Doctor Morrell of Harvard was the family physician and on the afternoon of November 11, 1957, he again examined

80

Ruth and told her mother that Ruth had pneumonia and would have to go to the hospital for further treatment.

Dr. Raymond Mayman is connected with the plaintiff hospital and Dr. Morrell made the necessary arrangements with him for Ruth to enter that hospital which is located at Rockford, Illinois, some forty miles distant from Harvard. In the early evening of November 11, 1957, Mr. and Mrs. Whaples took their daughter Ruth in their car to Rockford and she entered the hospital and there remained until December 4, 1957. She was returned to her home in Harvard at that time but one week later again entered the hospital at Rockford and there remained until December 13, 1957. The bill of the hospital for the services rendered Ruth during both periods amounted to $845.45. The reasonableness of that charge is not questioned.

The first notice appellant had that Ruth was a patient at the hospital came in a letter to Ray E. Lush, Supervisor of Town of Chemung, from the Associate Director of the hospital. This letter is dated December 4, 1957, and Mr. Lush testified he received it on December 6, 1957. The letter stated that Ruth was then a patient in the hospital and that an investigation of the financial condition of Ruth's parents disclosed they were medically indigent. Mr. Lush was requested to investigate the case and make arrangements to pay for the hospital services rendered Ruth.

Mr. Lush further testified that several days after he received this letter he contacted Mr. and Mrs. Whaples and learned that they were living in Harvard with the parents of Mr. Whaples. Thereafter and on December 14, 1957, Lush received another letter from the Associate Director of the hospital notifying him that Ruth had been readmitted to the hospital, enclosing a bill for the services rendered her and requesting that Lush make arrangements to pay that bill.

81

It appears from the record that Mr. and Mrs. Whaples were married on November 3, 1952, at which time Mrs. Whaples was sixteen years of age. Ruth is the eldest of four children. Prior to April 1957, the family lived in the Village of Chemung and from there moved to Harvard. After their marriage Mrs. Whaples was occasionally employed and during the first part of 1957 worked about four months receiving for her work $30 per week. While Ruth was in the hospital Mrs. Whaples obtained work and earned $45 per week. After Ruth's return from the hospital Mrs. Whaples continued to work until the middle of April, 1958. From the middle of April until December 1958, she was unemployed. During December 1958, she worked but from the beginning of the year 1959 she had no employment and was not working at the time of the hearing.

From November 1956, to November 1957, Mr. Whaples was employed about seven months working 40 to 48 hours per week and receiving $1.85 per hour. At the time Ruth entered the hospital on November 11, 1957, neither Mr. nor Mrs. Whaples were employed. Early in 1958 Mr. Whaples obtained a job and during that year worked about the same length of time as he had the previous year. From October 1, 1958, until April 1959, he was unemployed. The total earnings of both Mr. and Mrs. Whaples for the calendar year 1958 were $3051.

In 1958 Mr. and Mrs. Whaples acquired a housetrailer from a relative of Mr. Whaples by assuming an indebtedness to a finance company. Under the arrangement then made they were obligated to pay $50.60 to the finance company each month. At the time of the hearing of this case on April 16, 1959, the balance due the finance company upon this house trailer was $2200 and five of the monthly installments of $50.60 were in arrears. Neither Mr. or Mrs. Whaples own any real

estate. The furniture they had came with the trailer and other than a small (if any) equity in their house-trailer their assets at the time Ruth entered the hospital was a car upon which they were paying $46 per month. Prior to the hearing this car had been repossessed by the finance company. At the time of the hearing they had a 1950 Mercury automobile which was not operable. They also had a television set, obtained for $20 from the mother of Mr. Whaples.

It further appears from the evidence that on November 11, 1957, the day Ruth was taken to the hospital at Rockford, her parents were indebted to the Harvard Hospital in the sum of $286 for services previously rendered Mrs. Whaples and they were also indebted to Dr. Morrell for treating Ruth while she was ill and before she entered the Rockford Hospital in the sum of $63. The parents were also indebted to Doctors Quincannon, Mayman and Ballinger, Schuyler and O'Malley aggregating $786. There were other medical bills, grocery bills and an indebtedness for gas and oil and an unpaid obligation to a Loan Company.

The applicable statute in force when the services sued for were rendered Ruth Whaples, is found in the Public Assistance Code and reads: "Assistance to the medically indigent: When any person not otherwise eligible for or receiving general assistance . . . shall fall sick or die not having sufficient money, property or other resources, including income and earnings available to him over a twelve-month period, to meet the cost of necessary medical, dental, hospital, boarding or nursing care, or burial, the supervisor of general assistance charged with the duty of providing general assistance in the governmental unit in which such person may be at the time of his illness or death, shall give or cause to be given to him, such care as may be necessary and proper including transportation . . ." [Ill. Rev. Stats 1957, Chap. 23, sec. 414].

■ The trial court found that this was an emergency case and that the parents of Ruth were medically indigent persons. The evidence sustains these findings. The only reasonable conclusion that can be arrived at from a consideration of all the evidence found in this record is that Mr. and Mrs. Whaples clearly come within the provisions of the statute. They were not eligible for or receiving general assistance under the provisions of the Public Assistance Code. They were, however, unable to provide either in their home or anywhere else the necessary and proper care which their daughter then required. Their family physician recommended the hospital and made the necessary arrangements for Ruth to enter. There is no suggestion that she did not there receive such care as was necessary and proper as indicated by the statute.

The position of counsel for appellant is that if this was an emergency case and the removal of Ruth from her home to the hospital was necessary and urgent still notice to appellant was a condition precedent to any recovery. "This" continued counsel in their argument, "is the main issue to be decided on this appeal and strange as it may seem, to support their point they (counsel for appellee) cite the same two cases that are relied upon in our brief to establish the contrary."

In St. Anthony's Hospital of Sisters of St. Francis, Inc. v. The County of Fayette and Town of Avena, 313 Ill. App. 653, cited and relied upon by counsel for both parties, St. Anthony's Hospital sought to recover a judgment against the County of Fayette and the Town of Avena for hospitalization services rendered to a patient in that hospital from March 4, 1939, to December 25, 1939. The trial court rendered judgment for the defendants. The Appellate Court affirmed the judgment as to the Town but reversed the judgment as to the County.

84

It appeared in that case that the patient lived and worked in Avena Township, Fayette County, for several months prior to March 4, 1939. On a Saturday morning he fell and injured his leg. The following Monday a local doctor visited him and prescribed some medicine. A few days later the patient developed a cold and was threatened with pneumonia. The patient had no money or property and the doctor advised that he be taken to the hospital and on March 4, 1939, he entered the hospital and received the services sued for. According to the testimony of an agent of the hospital he notified the Supervisor of Avena Township after the patient had been in the hospital about two months. The Supervisor testified, however, that he did not learn that the patient was hospitalized until he received from the hospital a bill of $525 for six months' treatment.

The court, in its opinion, stated that the action was based on the statute then in force [Ill. Rev. Stats 1939, c 107, sec. 24], which read:

"When . . . any person not coming within the definition of a pauper, of any . . . county . . . shall fall sick or die, not having money or property to pay his board, nursing and medical aid or burial expenses, the overseer or overseers of the poor of the . . . town . . . in which he may be shall give, or cause to be given to him such assistance as they may deem necessary and proper . . .; and the county shall pay the reasonable expense thereof, which expenses of board, nursing, medical aid . . . may be recovered . . . from the county of which he is a resident, in an appropriate action."

The court stated that the statute made the Supervisor of the Township the overseer of the poor and that the evidence disclosed that the patient, when admitted and while he was in the hospital, did not have

85

sufficient money or property to pay his hospitalization and was within the class of persons entitled to hospitalization under the applicable statute. The court then said: "The cases have dispensed with the necessity of prior notice to the overseer of the poor, where hospitalization or medical assistance is urgently required, and it is not feasible to notify the overseer prior to the giving of the assistance to the needy person. The same cases either hold or indicate, however, that notice must be given such overseer within a reasonable time after the emergency treatment begins. (County of Fayette v. Morton, 53 Ill. App. 552; County of Clinton v. Pace, 59 Ill. App. 576; County of Winnebago v. City of Rockford, 61 Ill. App. 656; County of Madison v. Haskell, 63 Ill. App. 657; City of Chester v. County of Randolph, 112 Ill. App. 510; Deason v. County of Williamson, 188 Ill. App. 316.) The basis of the decisions which allow recovery without notice is that the emergency shown in each of such cases dispensed with the necessity of notice."

The court in the St. Anthony Hospital case then held that the evidence disclosed that no emergency existed when the patient was received at the hospital on March 4, 1939, and that the reason notice was not given at that time by the hospital to the Supervisor was because it was then understood that the hospital services were covered by insurance. The court then concluded that the claim of the hospital was properly disallowed for services rendered prior to the time the Supervisor was actually notified of the hospitalization being given but held that the Supervisor's inaction, after he did learn the patient was hospitalized, did not exempt the county from liability after the date of notification and that judgment should have been rendered for the plaintiff for such services rendered during such period. "It is not denied," said the court, "that eventually the plaintiff, through its agent, Ruedger, notified the

86

overseer that the patient was desperately ill and needed either county or township support for his future hospitalization. It then became the duty of the overseer to see that relief was given, which he did not do. From that time on the defendant, County, was liable for the relief thereafter given."

The opinion in St. Anthony's Hospital v. The County of Fayette and Town of Avena, 313 Ill. App. 653, supra, was filed on March 2, 1942. The Public Assistance Code became effective on August 4, 1949. The applicable provisions of the Public Assistance Code and the provisions of par. 25, sec. 24, Chap. 107, Ill. Rev. Stats. 1939, are similar in many respects. Nothing is said in either about notice being required to be given to the officer charged with the duty of providing assistance. The statute in force in 1939 required the overseer of the poor to give or cause to be given such assistance *as the overseer may deem necessary and proper.* The applicable provision of the Public Assistance Code charges the Supervisor of the Town not with the duty of providing such assistance as he may deem necessary and proper but *such care to the medically indigent as may be necessary and proper.*

In the instant case the trial court properly found that on November 11, 1957, hospital care for Ruth was necessary and proper. Under the holding in St. Anthony's Hospital v. The County of Fayette and Town of Avena, 313 Ill. App. 653, supra, it was unnecessary that notice, prior to the time Ruth entered the hospital be given Mr. Lush, the Supervisor. Under the holding in the St. Anthony's Hospital case it was necessary, however, that within a reasonable time thereafter, appellee should have notice. The assistant credit manager of appellee testified she contacted the parents of Ruth a couple of days after Ruth was admitted to the hospital but they did not come to the hospital. Thereafter and on December 4, 1957, the day

87

that Ruth left the hospital and 23 days after her admission, appellee did give notice to appellant that the hospital expected that the services which it had rendered Ruth should be paid for by appellant. All Mr. Lush did after he received this information was to ascertain that Ruth's parents lived in Harvard. From December 4, 1957, until December 11, 1957, Ruth was at home. The Supervisor did not contact her or her parents. Ruth was again admitted to the hospital on December 11th for further treatment and remained there until she was finally discharged on December 14, 1957.

■ While the Public Assistance Code makes no requirement as to notice, it does provide that the provisions of that act so far as they are the same or substantially the same as any prior statute, shall be construed as a continuation of such prior provision and not as a new enactment. (Ill. Rev. Stat. 1959, Chap. 23, par 103, sec. 1–3.) And when a court construes a statute and that construction is not disturbed by subsequent legislation on the point decided, it is presumed, that the court's construction is in harmony with legislative intent. (Maitzen v. Maitzen, 24 Ill.App.2d 32, 37; 163 N.E.2d 840, 843.)

■ Appellant was entitled to be notified within a reasonable time after Ruth was brought to the hospital. When the emergency passed which brought her to the hospital does not appear from the evidence. What was a reasonable time, under the facts and circumstances in this case was a question of fact for the trial court to determine. The statute imposed a liability on appellant to provide Ruth with such care as was necessary and proper. This was just what appellee furnished. It is not contended otherwise. By the inaction of Mr. Lush, after he was notified of the services

88

being furnished Ruth by appellee, he inferentially approved them.

Under the law and evidence found in this record the judgment of the trial court must be affirmed.

Judgment affirmed.

McNEAL, P. J. and SPIVEY, J., concur.