## County of La Salle. v. Elnathan P. Hatheway.

1. COUNTIES—*Liability for Surgical Aid Rendered to Poor Persons.*— A surgeon who renders surgical aid to a person not coming within the definition of a pauper, may recover for such services from the county, provided he can show an employment by the overseer of the poor, or a ratification of his services after they are rendered, by such overseer.

2. COUNTY BOARDS—*Power to Adopt Rules.*—The county board has the power to adopt reasonable rules and regulations; and when adopted they must be complied with, or the county will not be liable; but in the absence of such rules, the power of the overseer of the poor, or the supervisor of the town, to bind the county, is unrestricted, except that he can not stipulate for unreasonable amounts.

3. OVERSEERS OF THE POOR—*Authority Not Lost by Removal of Sick Person.*—The necessity of removing the patient to a hospital, in another town, does not deprive the overseer of the poor of his authority in the case.

4. ADMISSIONS—*By Tender.*—Where a county makes a tender to a person presenting a claim it is an admission of its liability to the extent of the tender.

**Assumpsit,** for surgeon's services.  Trial in the Circuit Court of La Salle County; the Hon. SAMUEL C. STOUGH, Judge, presiding.  Verdict and judgment for plaintiff.  Appeal by defendant.  Heard in this court at the May term, 1898.  Affirmed.  Opinion filed September 26, 1898.

CLARENCE GRIGGS, attorney for appellant.

BUTTERS, CARR & GLEIM, attorneys for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

On September 18, 1896, Nels Jacobson, an unmarried man, twenty-six years of age, and a resident of the town of Rutland, La Salle county, was seriously injured by accident in said town, and then needed surgical and medical aid.  Jacobson did not come within the legal definition of a pauper, but did not have money or property to pay his board, nursing and medical aid.  Appellee, who is a physician and surgeon, was called to Thompson's farm, in the town of Rutland, to give the injured man such aid as

might be necessary; it was deemed advisable to remove him to a hospital; and he was accordingly taken to Ryburn Hospital, Ottawa, where, upon consultation with other surgeons, it was decided amputation of the leg was necessary to save the man's life. Supervisor Douglas, of the town of Rutland, where the patient resided, was telephoned, but he could not then be found, and the amputation was made without his authority. Soon after, appellee had a telephone from Douglas, who told Dr. Hatheway to go ahead and take care of the case, and give the patient the attention he needed, and he would see that the county paid the bill, and this the appellee did. A bill was presented to the board of supervisors of the county for the services rendered by the appellee; $125 was allowed, which appellee refused to accept, and commenced this action to recover $415, the amount of his claim. A trial by jury resulted in a verdict against appellant for $320, and a remittitur of $70 having been entered, the court overruled appellant's motion for a new trial, and gave judgment against it for $250, from which it appeals to this court, insisting that the court erred in refusing to admit proper evidence on the trial; that it gave improper and refused proper instructions to the jury; that the verdict is against the evidence, the damages excessive, and that a new trial should have been awarded on the ground of newly-discovered evidence.

The section of the statute creating the liability of the county in cases like the one presented, if such liability exists, is as follows: " Sec. 24. When any non-resident, or any person not coming within the definition of a pauper, of any county or town, shall fall sick, not having money or property to pay his board, nursing and medical aid, the overseer of the poor of the town or precinct in which he may be, shall give or cause to be given to him such assistance as they may deem necessary and proper, or cause him to be conveyed to his home, subject to such rules and regulations as the county board may prescribe; and if he shall die, cause him to be decently buried." Rev. Stat. p. 1183.

It is first insisted the court erred in refusing to permit

appellant to prove on the trial the relative expense of keeping a single person in the county house and in town; and in support of this instance refers to rule second of the board, which is as follows: "Second. That all single persons deemed worthy of aid shall receive the same only by being sent to the county house; provided, that they can not be kept at a less expense in their respective towns." Upon an examination of the rules adopted by the board, as they appear in evidence, we think they have no application to a case arising under the section of the statute we have quoted, but apply only to such persons as are defined paupers. We are aided to this conclusion from the first clause of rule first, which we think also qualifies rule second, and which is, "that no resident shall be relieved unless on the recommendation of three responsible persons." It would hardly be practicable or reasonable to require such a preliminary in an emergency case like the one presented. So in respect to the section of the statute under consideration, no rules were extant, and the evidence offered was properly rejected. Under the terms of the statute the board has the power to adopt reasonable rules and regulations; and when adopted they must be complied with or the county will not be liable; but in the absence of such rules, as in this case, the power of the overseer of the poor, the supervisor of the town, to bind the county, is unrestricted, except that he can not stipulate for unreasonable amounts. See DeWitt County v. Wright, 91 Ill. 530, and County of Perry v. City of Du Quoin, 99 Ill. 479. Here the supervisor, Douglas, who was the overseer of the poor in the town where Jacobson resided and was injured, was sought by appellee, but at the time was not found; he, however, afterward gave full authority to appellee, and as we think, ratified that which had been previously performed; and we have no doubt thereby created a clear liability against the county under the terms of the statute, to pay a reasonable sum. We do not think the necessity of removing the patient to the hospital in another town deprived Douglas of his authority over the case. Moreover, appellant having

tendered to appellee $125, thereby admitted its liability, and we can not say the instructions complained of are erroneous.

The court might properly have given a peremptory instruction to find the issues for the plaintiff, leaving the question of damages alone for their consideration. In such case no error of instructions could have harmed the appellant, unless it related to the subject of damages, and we find no harmful instructions in that respect. The instructions refused were not proper to have been given, and in view of the approval of the trial judge of $250, we are not inclined to think the amount of damages for which judgment was rendered, is excessive. Neither do we believe the newly-discovered evidence was of a conclusive character; besides it would seem to follow from what we have already said, respecting the tender that was made, it is doubtful if the evidence would be admissible. If the proposed evidence was considered, and given its full probative force, it would only prove that since the treatment given to the injured man he has received $500 in settlement for the negligence of the person causing his injuries; and this would not prove or tend to prove that at the time appellee rendered the aid for which recovery was had, Jacobson was not such a person as described by section 24 of the statute above quoted.

The evidence concerning the alleged agreement of the appellee to accept $125, in full of his claim, was conflicting; and the jury might have found either way upon that point and such verdict be sustained; and we do not therefore feel warranted in disturbing it for such reason.

Finding no reversible error in the record of the Circuit Court its judgment will be affirmed.