### Jacob Eshelman v. The County of Clinton.

1. PAUPERS—*Infant Orphan Children.*—Where helpless infant children without means or relatives liable for their support are accepted as pauper wards of the county in which they reside and a private citizen keeps such children at the request of the supervisor of the town as *ex officio* overseer of the poor, boarding, clothing, and sending them to school, and in every way properly caring for them, he will be entitled to recover from the county a reasonable compensation for the same.

2. SAME—*Children Who Are Entitled to Relief.*—Where the father of two children, aged three and five years, died seized of a small and almost worthless tract of land, from the sale of which, including some rents collected, there was to the distributive share of each child $42.50, *it was held,* notwithstanding, that the children were paupers, and entitled to relief from the county.

3. COUNTIES—*Duties in Relation to the Poor.*—It is made the duty of counties by statute to relieve and support all poor and indigent persons residing therein and the supervisors are made *ex officio* overseers of the poor of their respective townships.

Assumpsit, to recover for keeping paupers. Error to the Circuit Court of Clinton County; the Hon. WILLIAM M. FARMER, Judge, presiding. Heard in this court at the August term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

VAN HOOREBEKE & LOUDEN, attorneys for plaintiff in error.

THOMAS E. FORD, State's Attorney, and M. P. MURRAY, attorneys for defendant in error.

MR. JUSTICE CREIGHTON delivered the opinion of the court. This was an action in assumpsit in the Circuit Court of

Eshelman v. County of Clinton.

Clinton County, by plaintiff in error against defendant in error, to recover a demand of $200 for keeping, clothing and caring for two infant paupers. Trial was by jury. Verdict and judgment in favor of defendant in error for costs.

Wallace and Rufus Rainey were infants aged respectively about five and three years. Their father was dead and in the fall of 1894, they and their sister, seven years old, were living with their mother, who was very ill and entirely destitute. The poor of Clinton county were not supported by the several towns, but by the county at large, and the mother and these children were being supported by the county. Winter was coming on and on account of the continued illness of the mother, and the very tender years of the children, the family could not be kept together. The overseer of the poor suggested removing them all to the poor-house, but the mother was averse to this. A place was secured for the little girl, and plaintiff in error, at the request of the mother, took the two little boys to keep until spring, when they were to be returned to the mother, but the mother's illness continued and early in the spring she died, leaving these helpless infant children without means or any relative liable for their support. After the mother's death, plaintiff in error tried to get homes for these little boys, but could not succeed in doing so. In October, 1895, he spoke to the supervisor of his town, who was *ex officio* overseer of the poor, asking him to do something about the matter. The supervisor tried for two or three weeks to find homes for them but failed, and requested plaintiff in error to keep them and stated that he should be allowed reasonable pay for it. To this the plaintiff in error assented and continued to keep the children, boarding, clothing, and sending them to school and in every way properly caring for them. At the time this arrangement was made nothing was said as to the length of time it should continue. Beginning with the date of this agreement plaintiff in error charged $1 per week for each of the children, and at the end of the quarter presented his bill, which was paid, and so on at the end of each recurring quarter, including the quarter ending with

June, 1896. The bill for the quarter ending September was rejected. After this plaintiff in error called upon the then acting supervisor and *ex officio* overseer of the poor, who had succeeded the one with whom the arrangement was made. There is a conflict in the evidence as to what the conversation between plaintiff in error and the supervisor really was, but since the jury has found in favor of defendant in error, it is proper for the court to accept the version most favorable to its side of the controversy, and so we treat the supervisor's version as being the true one. It is in substance as follows:

" I was elected supervisor of Irishtown township in April, 1896. I don't believe I can give the dates of the conversation with Eshelman about these children. Eshelman came to my house the latter part of June, after the meeting of the board, and wanted to know why his claims were rejected. I said: 'I have looked into the case and these children have real estate and I do not think they are entitled to county aid; if you are tired of them, I will take them and place them in homes.' He left. He made me no answer. In September, or near the meeting of the board, he asked me in the court house. I told him that I would take the children and place them in homes. He wanted me to O K these bills. I did not think they were just claims and would not do so, but would take the children and place them in homes. He did not say yes or no to it. He persisted in my O K the claims. The next time he requested to be heard before the board. I moved to suspend the rules and stated I would take the children. He came to my house in November, 1897, he and Franklin, and told me he was going to Pennsylvania and needed money and wanted to know what I was going to do about these claims. I said the same thing as I did before, and he told me to come and get the children. I said: 'I requested you three times to let me have them, and now, if you don't want them, you can bring them to me.' He told me to get them homes. I told him I had to have the children first before riding around to secure them homes. That was the sum and substance of the conversation."

After this conversation the supervisor did not come to take the children away, did not procure homes for them, nor make any provision or arrangement for their care or support, and plaintiff in error continued to care for and

Eshelman v. County of Clinton.

support them as before and to present his bills quarterly for $1 per week each as before, but the county board refused to pay.

Counsel for defendant in error contend that these children were not paupers. Their father died seized of a very small and almost worthless tract of land, from the sale of which, including some little rent collected, there was to the distributive share of each of these boys net $42.50. This was applied on the bill for support of these children, and the amount deducted from the demand of plaintiff in error. The possession of some property does not always preclude one from just claim for pauper relief. Town of Wallingford v. Town of Southington, 16 Conn. 431. In Fish v. Perkins, 52 Conn. 200, it is held:

" A man who was partly blind and nearly incapacitated from work, who occupied with his wife, a basement of a small house with an acre of ground, having a life interest in the land and basement, which interest was not worth over $200 and was all the property he had, was entitled to help from the town. * * * That it was not necessary that his interest be sold and the proceeds expended before he could be regarded as a pauper."

These two children were not only in fact paupers and entitled to relief, but had already been fully recognized as such by defendant in error.

The powers and duties of the county board and overseers of the poor are defined and set out in chapter 107 of our statutes. So much of Sec. 14 as is applicable to the facts of this case is, " that every county * * * * shall relieve and support all poor and indigent persons residing therein." By Sec. 18 supervisors are made *ex officio* overseers of the poor for their respective towns. Sec. 20 provides that all such overseers of the poor shall have the care and oversight of all the dependent poor in their respective towns, and " shall see that they are suitably relieved, supported and employed, subject to such regulations as may be provided by the county board."

Counsel for defendant in error contend that rule 10 of the county board is such regulation as is provided by the

statute, and that plaintiff in error can not recover in this case because that rule was not complied with. Rule 10 is:

" Persons asking aid from the county must first file an affidavit with the supervisor of their town stating the financial condition of his means, or their means, of support; provided that temporary relief may be granted in case of necessity until the applicants are in a condition to make the necessary affidavit."

It does not appear to us that this rule was intended to apply to a case of such infants as these, but however that may be, it can have no application to the facts of this case. These children were accepted pauper wards of the county and properly so. Their status was fixed before this controversy arose.

Counsel for defendant in error contend that the county was relieved from further liability when the supervisor told plaintiff in error to bring the children to his house. The duty the county owed was to the children. It was not the duty of plaintiff in error to transport them to the place of residence of the supervisor, nor was it his duty to drive them in their helplessness from his own house, neither was it his duty to keep them at his own expense. But they being a proper public charge, and he having undertaken with the county to care for them for a reasonable compensation, was duty bound to continue to do so, until duly relieved therefrom or until their condition should so change as that they would no longer be a proper public charge. It was the duty of the supervisor as *ex officio* overseer of the poor to look after such wards as these children were, and if they were to be removed from one place to another, to himself do it, or have it done, and it was the duty of the county to either relieve plaintiff in error from the further performance of his undertaking, by taking the children to some other place, or to continue to pay him according to the original agreement, so long as he continued to keep and support them and they continued to be a proper public charge. Durfey v. Town of Worcester, 63 Vt. 422 is a most instructive case on this question, as is also Knight v. Inhabitants of Fort Fairfield, 70 Me. 500.

Plaintiff in error asked the court to give to the jury three instructions. The court modified one of them and gave it as modified and refused to give the other two. In this the court erred. They should all have been given as asked. We need not discuss these in detail for the whole case is covered in the foregoing general discussion. The court gave, at the request of defendant in error, three instructions. The first of these has no place under a proper interpretation of the issues in this case. The second and third are, in a number of respects, not in harmony with the law as we understand it and have herein above expressed it.

The judgment of the Circuit Court is reversed and the case remanded.