## BELKNAP *v.* TOWNSHIP OF BENTON.

1. MUNICIPAL CORPORATIONS — TOWNSHIPS — PAUPERS — MEDICAL SERVICES FOR INDIGENT PERSONS.

    Where plaintiff, a physician, being called in an emergency to treat an indigent patient, afterwards notified the supervisor of the township in which the patient resided that the father of the patient was unable to pay his bill and the supervisor directed him to treat the case and the township would pay the account, the only questions for the jury were plaintiff's good faith in the rendering of the services and whether the supervisor made an investigation and employed the plaintiff; it was error to permit the jury to determine as an issue in the case whether or not the patient's father was able to pay for medical services.

2. SAME—SUPERVISOR—CONTRACTS.

    Under 1 Comp. Laws, § 2336, the determination by the supervisor that the patient was entitled to relief was an official act binding the township to pay for medical services rendered in good faith in reliance on his direction.

3. SAME—PUBLIC OFFICERS.

When an officer has particular authority to exercise his judgment, after investigating the facts of which he is made judge, his finding of such facts is conclusive.

Error to Berrien; Coolidge, J.  Submitted January 15, 1912.  (Docket No. 70.)  Decided March 12, 1912.

Assumpsit by Fred R. Belknap against the township of Benton for medical services rendered to an indigent patient. Judgment for defendant. Plaintiff brings error. Reversed.

*George W. Bridgman,* for appellant.

*Gore & Harvey,* for appellee.

STONE, J.  This is an action of assumpsit brought against the township of Benton, in Berrien county, to recover for services of the plaintiff, who is a physician and surgeon duly licensed to practice, in performing a surgical operation upon, and care and treatment of, a young man named Edwin Pascal, who was under the age of 21 years, and a resident of said township of Benton, who had been severely injured by a gunshot; the bone of the right arm being shattered, and muscles, ligaments, nerves, and arteries lacerated and torn away.  The services began on the 27th day of March, 1904, and continued until sometime in the month of July following.

It may be said that this record presents the question whether the township of Benton is liable, and shall pay for the surgical treatment rendered to the boy by the plaintiff.  It is undisputed that the father had not requested public aid.  It was the claim, however, of the plaintiff, upon the trial, that the supervisor of the township authorized the treatment at public expense.  The plaintiff testified at considerable length upon this subject, claiming that it was a case of great emergency, and the plaintiff testifying, and it being undisputed, that he found the patient in a desperate condition; that the right arm

near the shoulder was, practically, completely severed. The bone, muscles, and nerves, and a large part of the blood vessels, were torn. In fact, nothing was left of the arm except a slight attachment which could have been clipped off with a pair of scissors. He testified that he proceeded to treat the boy, causing him to be removed to Mercy Hospital and taken into the operating room, where the plaintiff, with the assistance of two other physicians, spent nearly the entire afternoon in getting the arm in proper shape. The plaintiff continued to treat and care for the young man, and saved the arm. There is no claim or evidence that the charges for the services alleged in the declaration are in any way unreasonable.

On the evening of the day of the accident, or the next morning, plaintiff testified that he wrote to Mr. Jakway, the supervisor of the township, telling him of the injury, and that in the emergency he had been called upon to attend said Edwin Pascal, and that he was informed the father of the boy was poor and unable to pay any bills, and that he (plaintiff) desired to see him in relation to the matter at once. This letter was not replied to until the 5th of April following, when the supervisor wrote the plaintiff the following communication:

" *Dear Sir:*
" Yesterday, as you know, was town meeting, and as I had no reasonable grounds to expect re-election I thought it best to let the incoming supervisor take the case. However, the people have decided to hold me another year, so you may expect to see me Saturday p. m.
" Very truly,
" J. J. JAKWAY."

On the Saturday following there is no question that Mr. Jakway met the plaintiff at the latter's office. The plaintiff testified positively, and insists, that Mr. Jakway, as supervisor of Benton township, after making some investigation, authorized and directed him to treat the case, and care for the young man as a poor patient, make his bill as low as he could, and that the township would stand

good for it.   The plaintiff claims that, relying upon the fact that he was thus authorized by the supervisor, he continued to treat the case until the 11th of July following, when Mr. Jakway denied that he ever gave him any authority to treat the case.   There is some evidence in the record corroborating the testimony of the plaintiff; but Mr. Jakway testified, positively denying that he ever authorized the plaintiff to treat the case at the expense of the township.   The issues of fact in the case were submitted to a jury, and they returned a verdict for the defendant.

The legal question presented arises chiefly upon the charge of the court.   We have, after a careful reading of the record in this case, reached the conclusion that the entire case was tried upon the wrong theory.   We think that the material questions in the case are whether the supervisor ever authorized and directed the plaintiff to treat the case at the expense of the township, and whether the plaintiff acted in good faith in such treatment.   It appears undisputed that the young man was a minor, living with his parents in the township, and that he himself was without any property, and that his father was a man of very limited means.

Under our statute (section 2336, 1 Comp. Laws), the supervisor is the agent of the township for the transaction of all legal business.   It was the duty of the supervisor, when this question arose, and investigation had been made, to pass upon the question whether or not the care of this boy should be made a township charge.   He solely was charged with the duty of determining whether or not the boy, or his father, was such a poor person as to bring the case within the law providing for the support of the poor by the township.   It appears by this record that the distinction between township and county poor was restored in the county of Berrien in January, 1880; and that since that time each township cares for and supports its own poor.

Had the court submitted the simple questions of fact to

the jury whether or not the supervisor had in good faith investigated the matter, and employed the plaintiff, and whether the plaintiff had in pursuance of such employment in good faith rendered the services, the plaintiff would be in no position to complain. The difficulty is that in submitting the case to the jury, and under the evidence admitted in the case, the question of whether the Pascals were in fact poor persons within the meaning of the statute was submitted to the jury, and they were authorized to pass upon that fact. The following excerpt from the charge of the court will illustrate what we mean. After charging the jury correctly as to whether the plaintiff had been employed by the supervisor, the court proceeds as follows:

"Now, if Dr. Belknap was authorized by Mr. Jakway to treat young Pascal, this other question arises. In the first place, the question arises whether young Pascal was in destitute circumstances, requiring immediate relief. I do not think there is any particular controversy over that fact. It is a fact, however, which you have to arrive at. That is a fact which is necessary to be found in arriving at your deliberations. Of course, young Pascal was a minor son there, and he had no property, and he was very seriously injured by a gunshot wound, and was in immediate need of relief. I don't think there is any question about that proposition, that here was a party in destitute circumstances, requiring immediate relief. But the important question is this, whether the father of young Pascal was financially able to furnish medical services, that is, medical and surgical services under the circumstances. This is a question which I have concluded to leave to you, for you to determine, regarding it not as a question of law for the court to pass upon, but as a question for you 12 jurors to determine, whether, under all the circumstances of the case, here was a party (I mean the father), who was able to furnish the medical aid necessary for the relief of his son. If he was, if the father was able to furnish financial relief for the son, then, gentlemen, the township of Benton is not liable. That is, the supervisor has no authority to provide relief for persons of that kind. If he did, and if he could give orders to furnish relief to persons who were perfectly competent

and perfectly able to furnish medical relief or supplies, the township might be bankrupt through the negligent action of the supervisor. That is, some reasonable limitation must be given. Nor does it follow that because a man is a laboring man that therefore he is a poor man, or destitute. The simple question in this case is whether the father by his wages could reasonably earn enough to pay the physician for his services. You have heard the testimony in the case, and if you find that here was a burden to which he was inadequate, that he was totally unable from his earnings to pay for these services, why, gentlemen, you can find for the plaintiff, if you find that the supervisor actually authorized the plaintiff to render those services."

From a judgment for the defendant, the plaintiff has brought the case here, assigning many errors, including three on the portion of the charge above quoted.

We shall not find it necessary to discuss all the assignments of error for the reason already stated, that the case seems to have been tried and submitted to the jury upon the theory that it was for the jury, and not the supervisor, to determine whether the father of young Pascal was a poor person within the meaning of the statute relating to the support of the poor by townships. We are clearly of the opinion that the single question should have been submitted to the jury, whether or not the supervisor authorized these services on the part of the plaintiff; there being no question that the services were rendered.

We are of opinion that the determination by the supervisor that this person was one entitled to relief was an official act which was binding upon the township in favor of those who in good faith furnished medical attendance or supplies in reliance upon the order and direction of such supervisor. This is not only common justice, but it seems to find support in the authorities. *Rock Island County* v. *Rankin*, 118 Ill. App. 499; *Town of Kankakee* v. *McGrew*, 178 Ill. 74 (52 N. E. 893); *County of La Salle* v. *Hatheway*, 78 Ill. App. 95. As we have said, we think it is a question whether the plaintiff acted

in good faith under authority given him by the supervisor of the township.

It was held by this court in *Sheldon* v. *Stewart*, 43 Mich. 574 (5 N. W. 1067), that where an officer has a particular authority to exercise on his judgment, upon an investigation of the facts of which he is made the judge, his finding of the facts, in the absence of any controlling provision, is final as to their existence. In the case of *Horn* v. *Wayne Circuit Judge*, 39 Mich. 19, this court, in speaking of the power of the county clerk to approve of bonds, used the following language:

"A doctrine laid down and supported by high authority has a strong bearing upon the nature of the power confided to the clerk by this statute, and deserves notice.

"In *Vanderheyden* v. *Young*, 11 Johns. [N. Y.] 150–158, Mr. Justice Spencer said: ' Whenever the law vests any person with a power to do an act, and constitutes him a judge of the evidence on which the act may be done, and, at the same time, contemplates that the act is to be carried into effect through the instrumentality of agents, the person thus clothed with power is invested with discretion, and is, *quoad hoc*, a judge;' and this was approved by the Supreme Court of the United States in *Martin* v. *Mott*, 12 Wheat. [U. S.] 19–32.

"In *Allen* v. *Blunt*, 3 Story, 742 [Fed. Cas. No. 216], Mr. Justice Story declared that it might ' be laid down as a general rule that, when a particular authority is confided to the public officer to be exercised by him in his discretion upon an examination of facts, of which he is made the appropriate judge, his decision upon those facts is, in the absence of any controlling provisions, absolutely conclusive as to the existence of those facts,' and this statement received the unanimous approbation of the Supreme Court in the case of *United States* v. *Wright*, 11 Wall. [U. S.] 648. The principle has been often recognized and applied. *Burgess* v. *Gray*, 16 How. [U. S.] 48–64; *Town of Venice* v. *Murdock*, 92 U. S. 494; *Commissioners of Knox County* v. *Nichols*, 14 Ohio St. 260. See, also, *Moore* v. *Olin*, 6 Mich. 328; *Johnson* v. *Maxon*, 23 Mich. 129. Citations illustrating the application of the rule propounded might be greatly multiplied, but it is not needful to mention others."

This doctrine in its application is by no means confined to judicial and quasi judicial officers. See Mechem on Public Officers, §§ 567, 594, 957; *City of Detroit* v. *Wayne Circuit Judge,* 79 Mich. 384–387 (44 N. W. 622); 23 Am. & Eng. Enc. Law (2d Ed.), p. 372 *et seq.;* 29 Cyc. pp. 1432–1442 *et seq.*

Error is assigned because the court refused to charge the jury as requested by the plaintiff in his third request, which was as follows:

"If the jury find that it was the duty of the township of Benton to cause this boy, Edwin Pascal, to be properly cared for, and proper surgical treatment given, then the township would be liable to the plaintiff from the time he so notified the supervisor, whether the supervisor authorized the treatment or not."

If the refusal to give this request was error, which we do not decide, it was harmless error, because the question was left to the jury, and they found that Edwin Pascal was not a proper subject to receive such care and aid.

The other questions raised and discussed are not likely to arise upon another trial, in view of what we have already said.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.