FEILY v. BAY VIEW CAMPGROUND ASSOCIATION OF THE METHODIST EPISCOPAL CHURCH.

1. MUNICIPAL CORPORATIONS — TAXATION—CONSTITUTIONAL LAW—COMPROMISE AND SETTLEMENT.

Where there was a difference of opinion as to whether Act No. 108, Pub. Acts 1907, repealed Act No. 57, Pub. Acts 1901, under which defendant campground association is incorporated, and by section 22 of which it was provided that defendant should expend its highway taxes upon the streets and highways running through its grounds, a settlement of a controversy arising between defendant and the officers of the township, as to the right of the township to collect highway repair and road taxes assessed against defendant, all parties acting in good faith, *held,* legal and binding upon the township, which could not be set aside. at instance of interested taxpayers of said township.

2. SAME—SUPERVISOR IS LEGAL AGENT OF TOWNSHIP.
    Under 1 Comp. Laws 1915, § 2115, the supervisor of a town-
    ship is its legal agent for the transaction of all legal busi-
    ness, by whom suits may be brought and defended, and
    upon whom all process against the township shall be
    served.

Appeal from Emmet; Shepherd (Frank), J. Sub-
mitted October 16, 1919. (Docket No. 58.) Decided
April 29, 1920.

Bill by John Feily and others against the Bay View
Campground Association of the Methodist Episcopal
Church and others to set aside a settlement for the
payment of taxes. From a decree for plaintiff, de-
fendant association appeals. Reversed, and bill dis-
missed.

*Wade B. Smith,* for plaintiffs.

*Thomas, Shields & Silsbee,* for appellant.

MOORE, C. J. The Michigan Campground Associa-
tion was incorporated in 1876, and the land described
in the bill of complaint in this case was donated to it
by citizens of Petoskey. The association did not per-
form highway labor tax on the highways of the town-
ship, nor did it commute the same. In 1890 it was
reincorporated under Act No. 39 of Public Acts of
1889 (2 Comp. Laws 1915, § 10062 *et seq.*), taking
the name "Bay View Campground Association of the
Methodist Episcopal Church," which is one of the de-
fendants. The title of that act reads:

"An act to authorize the formation of corporations
for the purchase and improvement of grounds to be
occupied for summer homes, for camp-meetings, for
meetings of assemblies or associations and societies
organized for intellectual and scientific culture and

for the promotion of the cause of religion and morality, or for any or all of such purposes."

In 1901, by Act No. 57 the legislature amended Act No. 39 of the Public Acts of 1889, under which appellant is incorporated.   Section 22 of Act No. 57 (2 Comp. Laws 1915, § 10083) reads:

"All moneys assessed, levied and paid upon the property of such association for highway purposes, including labor, tax or assessment, shall be expended and laid out upon the highways and streets upon or running across the lands of the association at such time and times, at such place and places, and in such manner as shall be directed by the board of trustees, or by the association's superintendent of the grounds: *Provided always*, That such expenditure shall not in any manner do away with, lessen or abridge the jurisdiction and control of the association or its trustees over or upon such streets and highways hereinbefore granted."

By Act No. 108, Public Acts of 1907, the legislature adopted a method for raising and expending highway taxes, radically different from that theretofore in force, and repealed all laws, acts and parts of acts contravening the provisions of said Act No. 108.   It is the claim of the defendants that this act did not affect in any way the provisions of section 22 above quoted.

There was assessed upon and levied against said land for each of the years 1909, 1910, 1911 and 1912, a "highway improvement tax" and a "road repair tax." The defendant was advised that the township could not collect these taxes so levied because of the provision of section 22 before quoted.   It paid the State, county, township and all other taxes assessed against it except these highway taxes.   Conferences were had between the officers of the association and the township officers looking to a settlement of the controversy.

We quote from the testimony of the supervisor of the township as to what occurred:

"I was supervisor for the years 1909, 1911, 1912 and 1913; I was not for the year 1910. As supervisor I was familiar with the assessment against the Bay View Campground Association for the highway improvement fund, and for the road repair tax fund for the years 1909, 1911 and 1912. I was familiar with these funds and taxes for the four years in controversy. I knew of the controversy between the township and the Bay View Association, and as to whether these were legal taxes against the association. * * *

"I am the George Kilborn, supervisor, spoken of in the record, and was at the meeting on August 7th, or 8th. E. J. Shanley was present and two justices were present at the meeting. At that meeting Mr. Smith was present, and Mr. Gordon, and the prosecuting attorney of this county, Mr. Sweeney, was present. The purpose of the meeting was to get some agreement or adjustment on the tax question. * * *

"Q. An agreement as to what?

"A. Why, some settlement that would be satisfactory to the Bay View Association and the township, both, as to both the highway repair and road tax fund. They were both discussed and given consideration for the purpose of settling the controversy between the township and the association as to what should be done with those taxes. I have been supervisor for several years, and knew all the facts and circumstances concerning the claims of the association as to whether or not they should pay those taxes, and also as supervisor of the township I know all the facts and circumstances concerning the claim of the township as to those funds, and was thoroughly familiar with the claims on both sides as to the amount of the taxes. I think that was true of the other members of the board who were there that day. I was satisfied that day that myself and the other members of the board thoroughly understood the rights of the township and the claims of the township, and that Mr. Gordon and Mr. Smith understood the facts and circumstances from the point of view of the Bay View Campground Association. The matter was pretty thoroughly discussed by all the parties present. Mr. Sweeney, the prosecuting attorney, entered

into the discussion and we consulted him in regard to the manner in which we could release this repair fund. I think we had consulted him previous 'to this day. * * * In the talk there we finally came to an agreement as to how the controversy as to these taxes between the township and the association should be settled, and compromised that the association should pay the highway improvement fund; that the association should retain the road repair fund for these four years, and as a part of the agreement the association was to pay the collection fee of $172.50 but no interest was to be paid on either fund. All of these items were thoroughly discussed and considered by all of us at that date. In making the agreement and settlement I felt that that was a proper and fair settlement under the claims of the parties under the conditions, and I still think so, and whatever action grew out of that agreement was pursuant to, and carrying out the agreement that was made there, and the Bay View Campground Association actually paid the highway improvement fund and the collection fee. The road repair fund and the interest was covered on the books of the township in the bookkeeping between the county and the county treasurer, and that charge credited back to the account. These taxes were due the township. All the taxes in controversy were for sums due the township. I, as supervisor, approved the settlement agreed upon, and did everything I could as supervisor to carry out the agreement, and did it in good faith. I knew of nothing connected with that transaction that was unfair, dishonorable or dishonest, nor did I know of anything that any one did that day that I considered unfair, dishonorable or dishonest. All the parties seemed to be acting in good faith, and after a full and complete discussion the settlement was arrived at and was carried out. The act under which this company was organized and the section 22 was there read and discussed."

Mr. Gordon testified in part as follows:

"My home is at Howell, Michigan, and I am an officer of the Bay View Campground Association, and as such have been active in the management of the business of that association for some years past, some

ten or twelve years. I am the Thomas Gordon spoken of as being present at the meeting of the Bear Creek township board on the 7th of August, 1913. Judge Smith was there with me.

"*Q.* What was the purpose of that meeting, and what happened?

"*A.* We were not getting any benefit from the road repair tax that we were paying as applied to our road and ground, which are open to the public, and used by the public, and we had previously used that portion, to the amount of about $500 per year, for repairs for our roads that are open from all sides, and it was refused to us entirely, but assessed to us just the same, and we sought some relief from that. We were advised that we withhold about the amount that we had been accustomed to use, and did so upon legal advice, and we wanted it settled. It ran several years. We wanted it in some tangible form that could have a conclusion to it, and therefore we sought the settlement with the township board for arriving at the conclusion that has been mentioned.

"*Q.* Did the association pay all of its other taxes except the highway improvement and road fund?

"*A.* As treasurer, I know that to be so. The association refused to pay the road repair fund.

"*Q.* State whether or not they claimed that was an illegal tax against them, and should not be assessed or levied against them.

"*A.* Because the articles of association gave us that privilege that way, and because of that law our association refused to pay the taxes. And these taxes for 1909, 1910, 1911 and 1912 have been returned as unpaid, and the meeting of the township board with myself and Judge Smith was for the purpose of adjusting the differences between the association and the township as to those two taxes. The prosecuting attorney of the county was there. He did not represent the Bay View Campground Association in any way. The whole subject of these taxes and our rights was discussed and debated at that meeting, fully, and as a result a settlement of the then existing claims for taxes was arrived at, the same as the one shown here in this testimony. Under the agreement reached at that meeting, the Bay View Campground Association was to pay the highway improvement fund and it did

pay it, and the township relinquished or released or left with the Bay View Campground Association, the road repair tax, and that was kept by the association. During that negotiation for the settlement, no opinion or fact was kept or suppressed in any way. It was a frank, fair, open and honest settlement, and every man taking part in it was sincere about it. There was no controversy between the association and Bear Creek township that was not compromised and settled at that time, and since that time the township of Bear Creek, through its officers, has not made any claim against the association for those taxes since the settlement of August 7, 1913, nor has any official of the county, nor any official of the State. In that negotiation I acted in good faith, believing that was a proper settlement and adjustment of the matter.

"*Cross-examination:* The law under which we were advised to withhold the highway taxes was section 22 of the act under which the association was organized.

\* \* \*

"*Redirect-examination: Q.* Mr. Gordon, this money that was retained by the association designated here as road repair fund, was that actually expended on the streets of the association, or an equivalent amount?

"*A.* An equivalent amount, I think, or more than that.

"*Q.* Running through the grounds of the association there is one street, Woodland avenue, is there not, that is a county road?

"*A.* Yes.

"*Q.* Is there any other public road through there?

"*A.* They are open to the public and used by the public.

"*Q.* I am speaking in a legal sense, as to whether they are owned by the public or not.

"*A.* Well, I could not say as to that.

"*Q.* Are all the streets open for use of the public for any one that desires to use them?

"*A.* There is no restriction.

"*Q.* Are they used promiscuously by the public?

"*A.* They are, yes, sir."

Circuit Judge Clement Smith testified in substance the same as Mr. Gordon.

Each of the 18 plaintiffs is a resident taxpayer in said township, and each is the owner of taxable property therein to the value of more than one hundred dollars. They were not satisfied with the settlement which was made and filed this suit to have it set aside and to have the lien for said unpaid taxes and interest declared, the tax receipts and records invalidated as evidence of payment, that the auditor general of the State of Michigan may have authority and that it may become his duty to foreclose said lien in the manner provided by law.

It is the claim of the plaintiffs:

"That Act No. 57 of 1901 is invalid,

"1. Because it has been repealed by Act No. 108, Pub. Acts 1907, with which it is the 'irrepressible conflict.'

"2. That it is unconstitutional,

"*a.* Because it is in conflict with section 9, art. 10, of the Constitution of 1908, which forbids the power of taxation being surrendered or suspended by the State or any municipal corporation.

"*b.* Because it seeks to place public funds outside of public control. *Detroit Museum of Art* v. *Engel,* 187 Mich. 432.

"*c.* That no declaration of the township board could render an invalid statute valid."

The circuit judge expressed himself as follows:

"Passing by the other objections urged by the plaintiffs, and some of them have much merit, it appears very clear to me that the act in question is unconstitutional for reasons stated in a long line of Michigan cases from *People* v. *Salem,* 20 Mich. 452, down to the recent case of *Detroit Museum of Art* v. *Engel,* and that no declaration or action of the township board could put life into it,"

—and granted the relief for which plaintiffs prayed. The case is brought here by appeal.

Was it so clear in 1913, that Act No. 108, Public Acts of 1907, repealed Act No. 57, Public Acts of 1901?

It does not purport to do so in terms. It does not refer to Act No. 57 either in its title or in the body of the act. The last named act provides for the formation of corporations, having among their purposes the holding of camp meetings and societies for educational purposes, "and for the promotion of religion and morality." It is a matter of common knowledge that the property of churches, colleges and schools is exempt from taxation. If the legislature by the passage of Act No. 108, Public Acts of 1907, had intended to withdraw the privilege granted the defendant association by section 22, Act No. 57, Public Acts of 1901, would it not have made some specific reference to the last mentioned act? Was it so clear in 1913, that lawyers and judges might not disagree and that litigation might not arise growing out of a difference of opinion in relation thereto? The very fact that we have the litigation involved in the instant case answers some of these queries. The defendant paid all taxes assessed against it except those mentioned in section 22. As to those no one had any interest in them except the township and its inhabitants on the one side, and the defendant and its members on the other. The county treasurer was a witness as to what was done by him. We quote:

"*Q.* And by whose advice did you receive it and treat it as cash?

"*A.* By the prosecuting attorney, Mr. Sweeney.

"*Q.* If you had received cash for the road repair taxes and the interest, what would you have done with it?

"*A.* I would have turned it over to Bear Creek township on the township quarterly settlement.

"*Q.* So that order took the same procedure exactly as cash would have taken if cash had been paid to you?

"*A.* Yes, sir."

The opinion in *Port Huron Engine & Thresher Co.*

v. *Port Huron Township*, 191 Mich. 590, had not been handed down in 1913.

There then being an honest dispute, could the township officers agree upon a settlement which would bind the township, or must the dispute be settled by expensive litigation? By the provisions of section 4035, 1 Comp. Laws 1915, the taxes when assessed became a debt to the township.

Section 2115, 1 Comp. Laws 1915, provides:

"*Be it enacted by the senate and house of representatives of the State of Michigan,* That the supervisor of each township shall be the agent for his township, for the transaction of all legal business, by whom suits may be brought and defended, and upon whom all process against the township shall be served."

See *Township of Bangor* v. *Transportation Co.*, 112 Mich. 601; *Township of Deerfield* v. *Harper*, 115 Mich. 678; *Belknap* v. *Township of Benton*, 169 Mich. 58.

In *Hulburt* v. *Defendorf*, 58 Hun (N. Y.), 585, there is an interesting discussion of the power of a supervisor to make a settlement of pending litigation in which his power was upheld. See, also, *Town of Cabot* v. *Britt*, 36 Vt. 349.

The record is persuasive that all parties to the settlement were acting in good faith. We have not overlooked *People* v. *Salem*, 20 Mich. 452, and *Detroit Museum of Art* v. *Engel*, 187 Mich. 439, cited by counsel, but think a reference to them will show they are clearly distinguishable from the instant case.

The decree of the court below is reversed and the bill of complaint dismissed, with costs to defendants.

STEERE, BROOKE, STONE, BIRD, and SHARPE, JJ., concurred. FELLOWS and KUHN, JJ., did not sit.