## Albert Jentink, Appellee, v. County of Lake, Illinois, et al., Appellants.

### Gen. No. 7,686.

1. COUNTIES—*no powers inherent in.* A municipality or quasi-municipality such as a county board, created by legislative enactment to better accomplish local government, derives its existence and all its powers from the legislature and has no inherent power.

2. COUNTIES—*what are limits to board's powers.* A county board of supervisors can exercise only such powers as are given by law, or arise by necessary implication, or are indispensable to carry into effect the object of their creation.

3. COUNTIES—*what patients may not be admitted to hospitals of.* Cahill's St. 1925, ch. 34, ¶ 24, providing for a county hospital, and ch. 107, ¶ 29, providing the county board may receive gifts to aid in maintaining the poor house or poor persons, and ch. 107, ¶ 29, providing for appointment of a county physician, do not impliedly confer power on the county board to admit to the hospital patients who pay for their treatment.

4. COUNTIES—*what patients may be admitted to hospitals of.* The county board may admit to the county hospital patients who are not paupers but who at the time have insufficient money or property to pay for hospital treatment.

5. COUNTIES—*implied power of board as to emergency hospital cases.* The purpose of a statute providing for county hospitals is essentially humanitarian and therefore the power to take care of emergency cases therein is to be implied from the statute.

6. STATUTES—*rules of construction.* The purpose of construing a statute is to ascertain the legislative intent and to give effect to that if not violative of the constitution, and to so construe the statute, if it is susceptible of more than one construction, as to carry out the legislative purpose.

7. COUNTIES—*nature of duty as to emergency hospital cases.* The police power of the State is the law of necessity, extending to all great public needs, and the moral duty of a county to care for emergency cases in the county hospital is closely related thereto.

8. INJUNCTION—*when granted to restrain use of hospital.* Courts of chancery will interfere to restrain a county board or county physician from using a county hospital for pay patients, a purpose not warranted by law.

9. APPEAL AND ERROR—*when admission of incompetent evidence in chancery case not ground for reversal.* The admission of incompetent evidence on a chancery hearing is not ground for reversal if there is sufficient competent evidence in the record to sustain the decree.

10. COSTS—*discretion of chancery in awarding.* Under Cahill's St. ch. 33, ¶ 18, providing the court may award costs at discretion, except the bill is dismissed, the chancery court's refusal to tax all costs against defendants in a case wherein decree was mainly for complainant will not be reversed as an abuse of discretion.

11. APPEAL AND ERROR—*when improper provision of decree not ground for reversal.* A decree awarding an injunction which is substantially correct in all particulars will not be reversed merely because of its provision that injunction shall not issue until final judgment is entered upon review.

Appeal by defendants from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the October term, 1926. Affirmed. Opinion filed June 2, 1927.

ASHBEL V. SMITH, State's Attorney, SIDNEY H. BLOCK, Assistant State's Attorney, and MAX PRZYBORSKI, for appellants.

E. V. ORVIS, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

Albert Jentink, a resident and taxpayer of Lake county, filed his bill in the circuit court of that county against the County of Lake, its board of supervisors and Charles Lieber, alleging that the county, for more than 20 years, has maintained a county hospital for the care of such sick as might by law be proper charges upon the county and that in addition, the county, through its board of supervisors, has for several years been carrying on in said hospital a general hospital business for money, and a general hospital to which the public has access for care and treatment, for which the county is and has been accepting revenue. It is also charged that Dr. Charles Lieber has charge of the hospital under contract with the board of supervisors and is known as "county physician"; that he is engaged in the general practice of medicine and surgery and that his private patients are received, treated and cared for at the hospital for pay to him personally and that he does not account to the county for such receipts. The bill prays for an injunction restraining the county, the board of supervisors and Dr. Lieber from receiving any patient in the hospital for pay, and that Dr. Lieber be enjoined from receiving any pay from any patient in the hospital. It is admitted in the answers to the bill that persons able to pay are treated in the hospital and that charges are made for such treatment in whole or in part as the financial circumstances of the patient or his relatives warrant. This practice is sought to be justified on the ground that all money so received by the county is devoted

exclusively to the care, maintenance and operation of the hospital and for the care and treatment of all sick persons therein, irrespective of their financial condition, and for better facilities and appliances.     Dr. Lieber's answer denies receiving any compensation personally from pay patients.

The chancellor found by the decree that four classes of patients are admitted to the hospital: (a) Those without means or relatives liable or able to contribute for their treatment and admitted by approval of the supervisor of the particular township where they reside; (b) those able to pay in part or who wish to pay for treatment out of future earnings and who are admitted by the approval of their supervisors for treatment and who are without relatives liable for their support; (c) emergency cases arising from sudden illness or accident without regard to financial standing and admitted by the superintendent of the hospital; and (d) patients able to pay for their treatment and admitted upon application to the superintendent; that this class is treated by the county physician or any doctor they may designate; that 69 per cent of the patients treated do not pay anything and 31 per cent pay in whole or in part for their treatment; that appellants have exceeded their authority in receiving and treating patients of class (d); and that the charges made to class (d) patients are reasonable and not less than the cost per hospital day for operating the hospital, and that patients of that class have never been admitted in sufficient number to prevent treatment of the other three classes.

The decree enjoins the county, the board of supervisors and Dr. Lieber from accepting as patients in the hospital and rendering surgical or medical treatment to them, any patients who are amply able to pay for such treatment as covered by class (d).     It provides that patients of class (a) may be admitted as heretofore, upon application to and approval of the

supervisor of their township; that class (b) patients may be admitted upon application to and approval of their township supervisor; that emergency cases may be admitted by the superintendent of the hospital, without approval of any supervisor, to receive treatment either from the county physician or any other physician, and pay said physician for treatment and pay the county for the hospital care and treatment; that the county or the hospital may receive donations from any and all persons for treatment rendered at former times in the hospital, either paying in whole or in part, and that donations from other institutions, societies or individuals may be received for the support of the hospital; and that none of the provisions of the decree shall apply to patients suffering with contagious diseases.

The parties to both sides of this controversy have appealed to this court. The original defendants claim that they are operating the hospital pursuant to the statute and receive every person who is sick and a proper county charge; that when there are vacant beds, patients who are able to pay in part or in whole are admitted and treated, the compensation received from them being applied to the use of the hospital, bettering conditions therein and enabling the county in a more fitting manner to take care of such sick as are county charges; that this does not amount to conducting a hospital for revenue; and that the decree is a judicial interference with the operation of the hospital and not warranted by law.

The original complainant, Jentink, contends that the court erred in not granting the injunction as prayed for in the bill of complaint, prohibiting the defendants from charging any patients and from accepting any patients or emergency cases, who are able to pay in whole or in part.

The statute in enumerating the powers of counties (Cahill's St. 1925, ch. 34, ¶ 24, subd. 7) provides that

each county shall have power "To cause to be erected, or otherwise provided, suitable buildings for, and maintain a county hospital and necessary branch hospitals for the care of such sick as may by law be proper charges upon the county, and to provide for the management of the same." Paragraph 2 of section 29 of the Pauper's Act (Cahill's St. 1925, ch. 107, ¶ 29, subd. 2) provides that the county board shall have power "To receive in the name of the county gifts, devises and bequests to aid in the erection or maintenance of the poor house, or in the care and support of poor and indigent persons." Paragraph 5, Cahill's St. ch. 107, ¶ 29, subd. 5, of the same section grants the power "To appoint a county physician and prescribe his compensation and duties."

Counties, townships, school districts, cities, villages and other municipal and quasi-municipal corporations are created under the authority of the legislature, to better accomplish the purposes of local government. These municipalities derive their existence and all their powers from the legislature which created them. There is therefore no such thing as an inherent power in any municipality which is created by legislative enactment. (*City of Chicago v. M. & M. Hotel Co.*, 248 Ill. 264.) The rule is well settled that a county board can exercise only such powers as are given by law or such as arise by necessary implication or are indispensable to carry into effect the object and purpose of their creation. (*Marsh v. People*, 226 Ill. 464; *County of Cook v. Gilbert*, 146 Ill. 268.) The power to maintain a hospital for the care of such sick as may by law be proper charges upon the county cannot be held to include by necessary implication the power to operate a hospital for the treatment of patients described in class (d); nor can it be said that the power to treat patients in class (d) is indispensable to the object and purpose of the legislature in authorizing the maintenance of hospitals for public charges. The chancellor

was right in enjoining the admittance and treatment of such patients.

We are also of the opinion that there was no error in providing that class (b) patients may be admitted to the hospital and treated as set out in the decree. The possession of some property does not always preclude one from a just claim upon the county for relief. (*Eshelman v. County of Clinton*, 88 Ill. App. 566; *Town of Big Grove v. Town of Fox*, 89 Ill. App. 84; *Rock Island County v. Arp*, 118 Ill. App. 521; *County of La Salle v. Hatheway*, 78 Ill. App. 95.) Persons, not paupers within the meaning of the statute, but having at the time insufficient money or property to pay for medical services, are entitled to county aid. (*City of Chester v. County of Randolph*, 112 Ill. App. 510.)

The chancellor did not err in reference to the admission and treatment of emergency cases. The purpose of the statute providing for the establishment and the maintenance of a hospital such as the one in question is essentially humanitarian, and for that reason alone the power to take care of emergency cases is embraced within its terms by necessary implication. It is a familiar rule of statutory construction that the purpose of construing a statute is to ascertain the legislative intent and when the intent is ascertained to give it effect if not in violation of the constitution, and when the statute is susceptible of more than one construction the court will give such construction as will effectuate the legislative purpose rather than one that will defeat it. (*Yeadon v. Clark*, 276 Ill. 424.) In a sense every man, regardless of his financial standing, when suddenly taken sick or injured is a public charge, at least for the time being. It is a common instinct and duty to render immediate assistance in such cases, and it is no less a collective obligation extending to organized society than it is an individual duty. If there is any difference in the measure of the duty of the public and that of individuals, the obligation rest-

ing upon society is stronger than that of the individual. The duty of an individual to relieve distress is of a moral nature only. That imposed upon society is more nearly a legal obligation by reason of the fact that the purpose to promote the interests and advance the general welfare of the people is expressly declared in constitutions and legislative enactments. If not within the strict letter of the law, the acceptance and treatment of emergency cases is clearly within its spirit. As to such cases the situation is closely akin to the doctrine that the rights of necessity are recognized as a part of the law, *necessitas vincit legem,* and may be said to be its corollary. The doctrine is often applied in construing the exercise of the police power of the State, which has been described as the law of necessity, and for ages has been a ruling principle of jurisprudence. It extends to all great public needs. (6 R. C. L. Const. L. § 1187.) An impending necessity will often justify and make lawful an act which would otherwise be actionable. The principle is particularly applicable to acts done for the public safety, such as injury to, or destruction of, private property in order to prevent the spread of fire, or disease, or to prevent other public calamity. If such an extreme measure as the destruction of private property may be resorted to in an emergency to prevent the spread of fire, or disease, can the right to use public property, especially devoted to a charitable purpose, for the emergency relief of suffering and the saving of human life be seriously controverted? We think not.

We believe the facts present grounds for equitable intervention against the defendants; but it is urged that the injunction should not have been extended against the defendant Lieber. The complainant testified he knew that several property owners who are amply able to pay for their treatment had been admitted to the hospital. Such patients paid the county for the hospital charges and some of them paid Dr.

Lieber for his professional services. This, the doctor did not deny in his testimony and in view of these facts it was proper to extend the decree against him. Courts of chancery will interfere to restrain authorities from a misuse of the fund intrusted to them or its appropriation to a purpose not warranted by law. (*Adams v. Brenan,* 177 Ill. 194 and cases cited.)

Cross errors have been assigned and it is urged that the court admitted evidence and based some of its findings upon matter in the answer which had been eliminated by sustained exceptions. It is well settled in chancery practice that the admission of incompetent evidence on the hearing is not ground for reversal, provided there is sufficient competent evidence in the record to sustain the decree, because the chancellor is presumed to have disregarded all evidence in the case except that which was competent and relative to the issues. (*Miller v. Gordon,* 296 Ill. 346; *Mix v. People,* 116 Ill. 265.)

It is also urged that the trial court erred in not taxing the costs against the defendants. It is provided by the Costs Act (Cahill's St. 1925, ch. 33, ¶ 18) that on the dismissal of a bill the defendant shall recover costs, but in all other cases in chancery not otherwise directed by law, it shall be in the discretion of the court to award costs or not. The award of costs in a court of chancery is a matter of discretion with the court and that discretion will not be reviewed except for abuse. (*Askew v. Springer,* 111 Ill. 662; *Schroeder v. Smith,* 249 Ill. 574.) We cannot say that the chancellor abused his discretion. It would serve no good purpose to reverse the decree because of the provision that no injunction shall issue until a final judgment is entered upon review. The decree is correct in all substantial particulars and is accordingly affirmed.

*Decree affirmed.*